1  RICHARD K. DIAMOND (State Bar No. 070634)
   rdiamond@dgdk.com
2  STEVEN J. SCHWARTZ (State Bar No. 200586)
   sschwartz@dgdk.com
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
4  Los Angeles, California 90067
   Telephone: (310) 277-0077
5  Facsimile: (310) 277-5735

6  Proposed Attorneys for David A. Gill,
   Chapter 7 Trustee

7               UNITED STATES BANKRUPTCY COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                     LOS ANGELES DIVISION

10 In re                        ) Case No. 2:11-bk-30486-RN
                                 )
11 INTERNATIONAL ARCHITECTURAL   ) Chapter 7
   GROUP, LLC,                   )
12                               ) EXHIBIT "2" TO EMERGENCY MOTION
                                 ) FOR ORDER: (1) AUTHORIZING USE OF
13          Debtor.             ) CASH COLLATERAL PURSUANT TO
                                 ) BUDGET; (2) AUTHORIZING CHAPTER 7
14                               ) TRUSTEE TO OBTAIN POST-PETITION
                                 ) FINANCING, (3) PROVIDING ADEQUATE
15                               ) PROTECTION IN THE FORM OF
                                 ) REPLACEMENT LIENS AND
16                               ) SUPERPRIORITY STATUS, (4)
                                 ) SCHEDULING A FINAL HEARING; (5)
17                               ) APPROVING PROCEDURES FOR HANDLING
                                 ) RECLAMATION CLAIMS; (6)
18                               ) AUTHORIZING PAYMENT TO JOINT
                                 ) PAYEES OF CHECKS; (7), AUTHORIZING
19                               ) EMPLOYMENT OF FORMER CRO AND OTHER
                                 ) KEY EMPLOYEES; (8) APPROVING
20                               ) EMPLOYMENT OF KENNETH B. ROELKE AS
                                 ) FIELD AGENT; (9) AUTHORITY TO USE
21                               ) PRE-PETITION CREDIT CARD MERCHANT
                                 ) ACCOUNTS; (10) APPROVING
22                               ) MARKETING/ LIQUIDATION AGENT; AND
                                 ) (11) SUCH OTHER RELIEF AS
23                               ) APPROPRIATE
                                 )
24                               )
                                 )
25                               ) Date:  May 26, 2011
                                 ) Time:  10:30 a.m.
26                               ) Place: Courtroom "1645"
                                 )        255 E. Temple St.
27                               )        Los Angeles, CA 90012
                                 )
28                               )

                                -1-

370212.01 [XP] 1130486A

1    David A. Gill, Chapter 7 Trustee (the "Trustee") of the

2  bankruptcy estates of International Architectural Group, LLC, Case

3  No. 2:11-bk-30486-RN ("IAG"), United States Aluminum of Canada

4  Limited, Case No. 2:11-bk-30507-RN ("USAC"), International

5  Architectural Products, Inc., Case No. 2:11-bk-30496-RN ("UAP"),

6  and International Management Services Group, Inc., Case No. 2:11-

7  bk-30504-RN ("IMSG") (collectively, the "Debtors") hereby

8  supplements the above-captioned Motion with his Exhibit "2"

9  thereto, entitled, "[PROPOSED] INTERIM ORDER AUTHORIZING LIMITED

10  USE OF CASH COLLATERAL AND ADDITIONAL CREDIT BY TRUSTEE AND

11  GRANTING PROTECTIONS TO SECURED PARTIES" (the "Interim Order").

12  The Interim Order was mutually prepared by the Trustee and the

13  Canadian Imperial Bank of Commerce, New York Agency, as

14  administrative agent (in such capacity, the "Agent"), and the

15  Lenders (together with the Agent, the "Secured Parties"), by and

16  through respective counsel.

17

18  Dated:  May 25, 2011            DANNING, GILL, DIAMOND & KOLLITZ, LLP

19

20                        By: _____

21                             STEVEN J. SCHWARTZ
                              Attorneys for David A. Gill,
22                             Chapter 7 Trustee

23

24

25

26

27

28

-2-

EXHIBIT "2"

```
1 │ RICHARD K. DIAMOND (State Bar No. 070634)
  │ rdiamond@dgdk.com
2 │ STEVEN J. SCHWARTZ (State Bar No. 200586)
  │ sschwartz@dgdk.com
3 │ DANNING, GILL, DIAMOND & KOLLITZ, LLP
  │ 2029 Century Park East, Third Floor
4 │ Los Angeles, California 90067
  │ Telephone: (310) 277-0077
5 │ Facsimile: (310) 277-5735
  │
6 │ Proposed Attorneys for David A. Gill,
  │ Chapter 7 Trustee
7 │
```

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| In re | ) Case No. 2:11-bk-30486-RN |
|---|---|
| | ) |
| INTERNATIONAL ARCHITECTURAL | ) Chapter 7 |
| GROUP, LLC, | ) |
| | ) [PROPOSED] INTERIM ORDER |
| | ) AUTHORIZING LIMITED USE OF CASH |
| Debtor. | ) COLLATERAL AND ADDITIONAL CREDIT |
| | ) BY TRUSTEE AND GRANTING |
| | ) PROTECTIONS TO SECURED PARTIES |
| | ) |
| | ) |
| | ) Date:  May 26, 2011 |
| | ) Time:  10:30 a.m. |
| | ) Place: Courtroom "1645" |
| | )        255 E. Temple St. |
| | )        Los Angeles, CA 90012 |
| | ) |
| | ) |

Upon consideration of the motion (the "Motion"),[1] dated May 20, 2011, of the Trustee (defined below) for the estates of International Architectural Group LLC and its affiliated chapter 7 debtors (the "Debtors") in the above-captioned cases (the "Cases") pursuant to sections 105, 361, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules for

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Loan Documents (defined below), as applicable.

-1-

1    the United Stated Bankruptcy Court, Central District of California (as amended, the "Local

2    Rules"), seeking, among other things:

3        (i) authorization for the Trustee, on behalf of the Debtors and their estates, to use

4    Cash Collateral (defined below) on a limited basis upon the terms and conditions set forth in this

5    Interim Order (defined below) and the Budget (defined below);

6        (ii)authorization for the Trustee, on behalf of the Debtors and their estates, to obtain

7    Additional Credit Advances (defined below) from the Secured Parties (defined below) on a limited

8    discretionary basis upon the terms and conditions set forth in this Interim Order (defined below)

9    and the Budget (defined below);

10        (iii)the granting to the Agent (defined below), for the benefit of the Agent and the

11    other Secured Parties (defined below), of postpetition liens, replacement liens, superpriority

12    administration expense claims, and other adequate protections; and

13        (iv)the scheduling of a final hearing (the "Final Hearing") to consider entry of an

14    order granting the relief requested in the Motion on a final basis (the "Final Order").

15        The interim hearing on the Motion having been held on May 26, 2011 (the "Interim

16    Hearing"); and based upon all of the pleadings filed with the Court, the evidence presented at the

17    Interim Hearing and the entire record herein; and the Court having heard and resolved or overruled

18    all objections to the interim relief requested in the Motion; and the Court having noted the

19    appearances of all parties in interest; and it appearing that the relief requested in the Motion and

20    entry of this interim order (the "Interim Order") is in the best interests of the Trustee (defined

21    below), the Debtors, their estates, and creditors; and the Trustee having provided notice of the

22    Motion as set forth in the Motion and it appearing that no further or other notice of the Motion need

23    be given; and after due deliberation and consideration, and sufficient cause appearing therefor:

24        **IT IS THEREFORE FOUND, DETERMINED, ORDERED AND ADJUDGED**

25    **THAT:**

26        1.    <u>Petition Date</u>.  On May 11, 2011 (the "Petition Date"), each of the Debtors

27    commenced chapter 7 cases (the "Cases") with the filing of voluntary petitions for relief under

28

-2-

1  chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District

2  of California (the "Court").

3      2.  Trustee.  David A. Gill of Danning, Gill, Diamond & Kollitz, LLP has been

4  appointed and qualified as chapter 7 trustee of the Debtors' bankruptcy estates and, as of the date

5  hereof, he is serving in that capacity (the "Trustee").

6      3.  Jurisdiction; Venue.  The Court has jurisdiction over these Cases, the parties,

7  and the Debtors' property pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to

8  28 U.S.C. §157(b)(2)(D).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory

9  predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy

10  Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Rules.

11      4.  Stipulations Regarding Loan Documents; Prepetition Secured Obligations;

12  Prepetition Security Interests.  In requesting the use of Cash Collateral (defined below) and the

13  Additional Credit Advances (defined below), the Trustee, on behalf of the Debtors and their

14  estates, permanently, immediately, and irrevocably acknowledges, represents, stipulates, and agrees

15  that, in each case, subject to paragraph 25 of this Interim Order:

16      (i)The Debtors International Architectural Group LLC, International Architectural

17  Products, Inc., and International Management Services Group, Inc. (collectively, the "Obligor

18  Debtors") are obligors under that certain credit agreement and those certain pledge and security

19  agreements and guaranty agreements, dated May 21, 2010 (together with all related security

20  agreements, notes, guarantees, pledge agreements, mortgages, fixture filings, transmitting utility

21  filings, deeds of trust, financing statements, instruments, agreements, documents, assignments,

22  account control agreements, or other security documents, as each of the foregoing may be

23  amended, modified or supplemented, collectively, the "Loan Documents"), among, as applicable,

24  the Obligor Debtors, Canadian Imperial Bank of Commerce, New York Agency, as administrative

25  agent (in such capacity, the "Agent"), and the Lenders (together with the Agent, the "Secured

26  Parties"), pursuant to which, among other things, the Lenders provided certain Loans to the

27  Borrower in the aggregate principal amount of $38,000,000;

28

-3-

1    (ii)as of the Petition Date, the Obligor Debtors were unconditionally indebted to the

2    Secured Parties under the Loan Documents in the aggregate amount of not less than

3    $26,706,597.55, plus any additional interest and fees, including agent fees, expenses (including any

4    attorneys', accountants', appraisers', and financial advisors' fees that are chargeable or

5    reimbursable under the Loan Documents), costs, charges, indemnification, all other amounts

6    owing, and all other obligations (monetary or otherwise, whether absolute or contingent, matured

7    or unmatured) incurred in connection therewith as provided in the Loan Documents (collectively,

8    the "Prepetition Secured Obligations"); and

9    (iii)in consideration for the Loans, and to secure the Prepetition Secured

10   Obligations, the Obligor Debtors, as Grantors, granted to the Agent, for its benefit and the benefit

11   of each other Secured Party, continuing, legal, valid, enforceable, and duly perfected first priority

12   security interests in and liens upon, without limitation, all of the "Collateral" identified in the Loan

13   Documents, whether now or hereafter existing, owned, acquired or created by such Grantors (the

14   "Prepetition Security Interests"), which includes Cash Collateral (defined below) and, subject to the

15   limited exclusions set forth in the Loan Documents,[2] all of the (a) Accounts, (b) Chattel Paper, (c)

16   Commercial Tort Claims, (d) Collateral Accounts, (e) Deposit Accounts, (f) Documents, (g)

17   General Intangibles, (h) Goods, (i) Instruments, (j) Intellectual Property Collateral and the

18   Computer Hardware and Software Collateral, (k) Investment Property, (l) Letter-of-Credit Rights,

19   (m) Money, (n) Supporting Obligations, (o) Mortgage Property and any other real property and

20   fixtures upon which a Mortgage was executed and delivered by any Obligor in favor of the Agent

21   for the benefit of the Secured Parties, (p) all books, records, writings, databases, information and

22   other property relating to, used or useful in connection with, evidencing, embodying, incorporating

23   or referring to, any of the foregoing, and (q) all Proceeds of the foregoing and, to the extent not

24   otherwise included, (i) all payments under insurance (whether or not the Agent is the loss payee

25   thereof) and (ii) all tort claims, (r) all Capital Securities in which Holdings has an interest that

26

27   [2]   The Prepetition Collateral (defined below) does not include the assets of the Debtor United
       States Aluminum of Canada Limited (the "Non-Obligor Debtor")

28

-4-

1  constitute Capital Securities of a Subsidiary of Holdings, including the Capital Securities of each

2  Subsidiary of Holdings, (s) all books, records, writings, databases, information and other property

3  relating to, used or useful in connection with, evidencing, embodying, incorporating or referring to,

4  any of the foregoing, and (t) all Distributions, products, offspring, rents, issues, profits, returns,

5  income and proceeds of and from any and all of the foregoing (including proceeds which constitute

6  property of the types described in this paragraph) (collectively, the "Prepetition Collateral") of the

7  Obligor Debtors;

8  (iv) all claims in respect of the Prepetition Secured Obligations and the Prepetition

9  Security Interests are not and shall not be subject to any avoidance, reduction, set off, offset,

10  recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims,

11  cross-claims, recoupment, defenses, disallowance, impairment, or any other challenges under the

12  Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or

13  entity and the Loan Documents constitute the legal, valid, and binding obligations of the Obligor

14  Debtors and their respective estates, and are enforceable against each such Obligor Debtor and

15  estate in accordance with the terms of the Loan Documents;

16  (v) the Agents and the other Secured Parties are not control persons or insiders of the

17  Debtors by virtue of any of the acts, omissions, transactions, events or other occurrence taking

18  place prior to the date hereof with respect to, in connection with, arising from or related to the

19  Debtors, the Loan Documents, these Cases or this Interim Order;

20  (vi) as of the date hereof, there exist no claims or causes of action against any of the

21  Agent or the other Secured Parties with respect to any acts, omissions, transactions, events or other

22  occurrence taking place in connection with, arising from, or related to the Debtors, the Loan

23  Documents, these Cases or this Interim Order that may be asserted by the Debtors or any other

24  person or entity;

25  (vii) as of the date hereof, there were no other liens on or security interests in the

26  Prepetition Collateral except for the Permitted Liens, to the extent such liens are determined to be

27  legal, valid, perfected, binding, and enforceable; and

28

-5-

1           (viii)the Trustee, on behalf of the Debtors, their estates and anyone who claims an

2    interest by, through or under the Debtors or their estates, forever and irrevocably releases,

3    discharges, and acquits the former, current, or future Agent and other Secured Parties, and each of

4    their respective former, current, or future officers, employees, directors, agents, representatives,

5    owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants,

6    accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Releasees") of and

7    from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action,

8    indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies,

9    proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type,

10    whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed,

11    contingent, pending, or threatened including, without limitation, all legal and equitable theories of

12    recovery, arising under common law, statute or regulation or by contract, of every nature and

13    description, arising out of, in connection with, or relating to this Interim Order, the Loan

14    Documents, and the Prepetition Secured Obligations, or the transactions contemplated hereunder or

15    thereunder including, without limitation, (i) any so-called "lender liability" or equitable

16    subordination claims or defenses, (ii) any and all claims and causes of action arising under title 11

17    of the United States Code, and (iii) any and all claims and causes of action with respect to the

18    validity, priority, perfection or avoidability of the liens or claims of the Agent or other Secured

19    Parties.

20          5.    Cash Collateral; Cash Collateral Accounts.

21          (i)    For purposes of this Interim Order, the term "Cash Collateral" shall mean all

22    cash, including, without limitation, deposit accounts, securities and other cash equivalents, tax

23    refunds, proceeds of accounts receivable and sales of property, as well as all other "cash collateral,"

24    as defined in section 363 of the Bankruptcy Code, in which the Agent under the Loan Documents

25    has, for the benefit of itself and the other Secured Parties, a lien, security interest or other interest

26    (including, without limitation, any adequate protection liens or security interests) whether existing

27    on the Petition Date, arising pursuant to this Interim Order, or otherwise.  The Trustee, on behalf of

28    the Obligor Debtors (and, as applicable, the Non-Obligor Debtor), requires the use of Cash

1    Collateral to preserve and maintain the value of, and liquidate the Debtors' assets and the

2    Prepetition Collateral, and maximize a return for all creditors, and in the absence of the use of Cash

3    Collateral, the continued administration and liquidation of the estates and their assets would not be

4    possible, and serious and irreparable harm to the Debtors, their estates, their creditors and equity

5    holders would occur, and further, the possibility for a successful sale of the Debtors' assets would

6    be jeopardized.

7         (ii)    The Agent and the other Secured Parties do not consent to the use of Cash

8    Collateral except on the terms and for the purposes specified herein and in accordance with the

9    budget attached hereto as Exhibit A (the "Budget"). Notwithstanding anything to the contrary

10   herein, the Trustee shall not be permitted to access or utilize any Prepetition Collateral (including

11   any Cash Collateral) with respect to or for the benefit of the Non-Obligor Debtor or its estate to the

12   extent there are sufficient assets and funds within such estate for the Trustee to access or utilize

13   with respect to the administration and liquidation of, and any other contemplated functions for, the

14   Non-Obligor Debtor and its estate and assets.

15        (iii)    All Cash Collateral, now or hereafter existing, that is collected or otherwise

16   received by the Trustee, whether prepetition or postpetition, shall be deposited, immediately and

17   hereafter daily, as collected or otherwise received, into deposit account #_____

18   maintained at _____ (the "Obligor Cash Collateral Account"). In addition, any cash on

19   hand, all proceeds and all other funds, now or hereafter existing, collected or otherwise received by

20   the Trustee, whether prepetition or postpetition, which are directly or indirectly attributable to

21   Additional Credit Advances (defined below) or Cash Collateral that are used by the Trustee to

22   provide a benefit, either directly or indirectly, to the Non-Obligor Debtor and its estate, shall

23   constitute "Non-Obligor Cash Collateral" and be deposited, immediately and hereafter daily, as

24   collected or otherwise received, into the deposit account #_____ maintained at

25   _____ (the "Non-Obligor Cash Collateral Account" and, together with the Obligor Cash

26   Collateral Account, the "Cash Collateral Accounts"). All cash on hand, all proceeds and all other

27   funds, now or hereafter existing, collected or otherwise received by the Trustee in respect of the

28   assets of the Non-Obligor Debtor and its estate, save and except Cash Collateral and/or Non-

-7-

1   Obligor Cash Collateral, shall be deposited, as collected or otherwise received, into deposit account

2   #_____ maintained at _____ (the "Non-Obligor Account"). For the avoidance of doubt,

3   the Obligor Cash Collateral Account shall be subject to the liens, claims and other protections

4   granted to the Agent and the other Secured Parties pursuant to paragraphs 15, 17 and 20 of this

5   Interim Order and the Non-Obligor Cash Collateral Account shall be subject to the liens, claims

6   and other protections granted to the Agent and the other Secured Parties pursuant to paragraphs 16

7   and 18 of this Interim Order.

8                  6.    Additional Credit Advances.

9                  (i)    The Trustee, on behalf of the Obligor Debtors (and, as necessary, the Non-

10  Obligor Debtor) and their estates, may require and request from the Secured Parties additional

11  credit to assist in the preservation, maintenance and liquidation of the Debtors' assets and the

12  Prepetition Collateral, and the continued administration and liquidation of the estates. The Secured

13  Parties may, in their sole discretion, pursuant to section 364(c) of the Bankruptcy Code, advance

14  additional credit ("Additional Credit Advances") to the Trustee, and the Trustee is hereby

15  authorized to obtain such Additional Credit Advances from the Secured Parties, in accordance with

16  the Budget and this Interim Order. For purposes of this Interim Order, the Additional Credit

17  Advances shall include the Trustee's use of Prepetition Collateral (including Cash Collateral) in

18  respect of the Non-Obligor Debtor and its estate, including, without limitation, any use of

19  Prepetition Collateral (including Cash Collateral) having a direct or indirect benefit on the Non-

20  Obligor Debtor and its estate. As of the date hereof, the Secured Parties provided to the Trustee, on

21  behalf of the Obligor Debtors (and, as applicable, the Non-Obligor Debtor) and their estates,

22  Additional Credit Advances in the amount of $250,000, which has been accruing interest at the

23  non-default rate provided in the Loan Documents as Obligations beginning May 16, 2011 and shall

24  be added to the principal of the Obligations.

25                 (ii)    For purposes of this Interim Order, the term "Obligor Additional Credit

26  Obligations" shall mean all amounts and obligations incurred and owing by the Trustee, on behalf

27  of the Obligor Debtors and their estates, to the Secured Parties, in connection with or as a result of

28  the Additional Credit Advances. For purposes of this Interim Order, the term "Non-Obligor

                                                    -8-

1    Additional Credit Obligations" shall mean all amounts and obligations incurred and owing by the

2    Trustee, on behalf of the Non-Obligor Debtor and its estate, to the Secured Parties, in connection

3    with or as a result of the Additional Credit Advances including, for purposes of this Interim Order,

4    all amounts and obligations incurred and owing by the Trustee, on behalf of the Non-Obligor

5    Debtor and its estate, to the Secured Parties, in connection with or as a result of the Trustee's use of

6    Prepetition Collateral (including Cash Collateral) in respect of the Non-Obligor Debtor and its

7    estate, including, without limitation, any use of Prepetition Collateral (including Cash Collateral)

8    having a direct or indirect benefit on the Non-Obligor Debtor and its estate.  All Obligor Additional

9    Credit Obligations and Non-Obligor Additional Credit Obligations (collectively, the "Additional

10   Credit Obligations") shall accrue interest at the non-default rate provided in the Loan Documents as

11   Obligations and such interest shall be added to the principal of such obligations.

12            (iii)    The Trustee is authorized to perform all necessary acts to obtain the

13   Additional Credit Advances.  Notwithstanding anything to the contrary herein, the Trustee shall not

14   request or utilize any Additional Credit Advances with respect to any Debtor to the extent the

15   Trustee has access to Cash Collateral sufficient to carry out the functions contemplated herein and

16   in the Budget; provided further that, unless the Agent consents in writing, the Trustee shall not

17   request or utilize any Additional Credit Advances with respect to the Non-Obligor Debtor or its

18   estate to the extent there are sufficient assets and funds within such estate for the Trustee to access

19   and utilize with respect to the administration and liquidation of, and any other contemplated

20   functions for, the Non-Obligor Debtor and its estate and assets.

21            7.    Purpose and Necessity of Additional Credit Advances.    The Additional

22   Credit Advances requested by the Trustee may be provided by the Secured Parties, in their sole

23   discretion, in accordance with the terms of this Interim Order and the Budget.  If the Trustee does

24   not obtain authorization to obtain Additional Credit Advances, on behalf of the Debtors and their

25   estates, the Debtors' estates will suffer immediate and irreparable harm.  The Trustee is unable to

26   obtain adequate unsecured credit allowable as an administrative expense under section 503 of the

27   Bankruptcy Code, or other financing under sections 364(a), (b), (c) or (d) of the Bankruptcy Code,

28   on equal or more favorable terms than the Additional Credit Advances.    Additional Credit

1  Advances are not available to the Trustee, on behalf of the Debtors, without granting the Agent, for

2  the benefit of the other Secured Parties, superpriority claims, liens, and security interests, pursuant

3  to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided in this Interim

4  Order. After considering all alternatives, the Trustee has concluded, in the exercise of its prudent

5  business judgment, that the Additional Credit Advances represents the best and only financing

6  available to it at this time. The Additional Credit Advances are the only loan available to the

7  Trustee and the Trustee has been unsuccessful in its attempt to find any alternative financing.

8  Additionally, the terms of the Additional Credit Advances and the use of Cash Collateral are fair

9  and reasonable and reflect the Trustee's exercise of prudent business judgment consistent with its

10 fiduciary duties. The Trustee shall only be authorized by this Interim Order to obtain Additional

11 Credit Advances from the Agent and the other Secured Parties, and is not hereby authorized to

12 obtain any Additional Credit Advances or any other postpetition financing pursuant to section 364

13 of the Bankruptcy Code or otherwise from any other party.

14         8.    Good Cause. Based upon the record presented to the Court, it appears that

15 the ability of the Trustee to obtain sufficient funding under the Additional Credit Advances, and

16 use of Cash Collateral, is vital to the Trustee, on behalf of the Debtors, their estates and creditors.

17 The liquidity to be provided under the Additional Credit Advances and through the use of the Cash

18 Collateral will enable the Trustee to continue to preserve and maintain the value of the Debtors'

19 assets and liquidate the Prepetition Collateral. The Debtors' estates will be immediately and

20 irreparably harmed if this Interim Order is not entered. Good cause has, therefore, been shown for

21 the relief granted in this Interim Order.

22         9.    Good Faith. The Additional Credit Advances and use of Cash Collateral

23 have been negotiated in good faith and at arm's length among the Trustee, on behalf of the Debtors,

24 and the Agent, on behalf and at the direction of the other Secured Parties, and all of the obligations

25 and indebtedness arising under, in respect of or in connection with the Additional Credit Advances,

26 the use of Cash Collateral, and this Interim Order shall be deemed to have been extended by the

27 Secured Parties in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in

28 express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the

1    Additional Credit Obligations, the Additional Credit Liens (defined below), the Additional Credit

2    Superpriority Claims (defined below), and the Obligor Debtors Protection Obligations (defined

3    below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and the

4    terms, conditions, benefits, and privileges of this Interim Order regardless of whether this Interim

5    Order is subsequently reversed, vacated, modified, or otherwise is no longer in full force and effect

6    or the Cases are subsequently converted or dismissed.

7            10.    Consideration.    The Trustee, on behalf of the Debtors, will receive and has

8    received fair consideration and reasonably equivalent value in exchange for access to the

9    Additional Credit Advances, the use of Cash Collateral, and all other financial accommodations

10    provided under the Loan Documents and this Interim Order.

11            11.    Consent.    Under the Loan Documents, holders of more than 50% of the

12    outstanding amount of Loans may consent on behalf of all Lenders to the provision of Additional

13    Credit Advances, the use of Cash Collateral, and the priming of the Prepetition Secured

14    Obligations.    After due deliberation and consideration, the Required Lenders explicitly consented

15    to the entry of this Interim Order, and all of the transactions contemplated herein (including without

16    limitation the priming effected by this Interim Order) and on that basis, among others, this Court

17    has requisite authority to enter this Interim Order under applicable law, and such consent is

18    sufficient under applicable law.    Additionally, as no Lender has objected to the Additional Credit

19    Advances, the use of Cash Collateral, or entry of this Interim Order, all Lenders are hereby deemed

20    to have consented to the entry of this Interim Order, and all of the transactions contemplated herein

21    (including without limitation the priming effected by this Interim Order).

22            12.    Entry of Interim Order.    The permission granted herein to obtain access to

23    funds hereunder is necessary to avoid immediate and irreparable harm to the Debtors' estates.

24    Entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as

25    its implementation will, among other things, allow for the successful liquidation of the Debtors'

26    estates. This Interim Order is entered based upon the findings, acknowledgements, and conclusions

27    herein, and upon the record made before this Court, and the good and sufficient cause

28    demonstrated.

-11-

1    13.    Disposition. The Motion is granted and this Interim Order is entered on the

2    terms set forth herein.    Any objections to relief granted in this Interim Order that have not

3    previously been withdrawn, waived, settled, or resolved and all reservations of rights included

4    therein are hereby denied and overruled on their merits with prejudice.

5    14.    Effectiveness.    This Interim Order shall constitute findings of fact and

6    conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date

7    immediately upon entry hereof.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d),

8    7062, or 9024 or any other Bankruptcy Rule, Rule 62(a) of the Federal Rules of Civil Procedure, or

9    the Local Rules, this Interim Order shall be immediately effective and enforceable upon its entry

10    and there shall be no stay of execution or effectiveness of this Interim Order.    This Interim Order is

11    in accordance with all Bankruptcy Rules and all Local Rules.

12    15.    Obligor Additional Credit Superpriority Claim. The Agent, for the benefit of

13    the other Secured Parties, is hereby granted an allowed superpriority administrative expense claim

14    (the "Obligor Additional Credit Superpriority Claim") pursuant to section 364(c)(1) of the

15    Bankruptcy Code for all Obligor Additional Credit Obligations, to the extent incurred by the

16    Trustee, on behalf of the Obligor Debtors and their estates, having priority over any and all other

17    claims against the Obligor Debtors and their estates, now existing or hereafter arising, of any kind

18    whatsoever, including, without limitation, all administrative expenses of the kinds specified in or

19    arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726,

20    1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become

21    secured by a judgment lien or other non-consensual lien, levy or attachment, which Obligor

22    Additional Credit Superpriority Claim shall be payable from and have recourse to all prepetition

23    and postpetition property of the Obligor Debtors and their estates and all proceeds thereof.    Except

24    as expressly set forth herein, no other superpriority claims shall be granted or allowed in these

25    Cases.    For the avoidance of doubt, following entry of the Final Order, the Obligor Additional

26    Credit Superpriority Claim may be satisfied from the proceeds of claims and causes of action under

27    sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code (the "Avoidance

28    Actions"); provided, however, that the Obligor Additional Credit Superpriority Claim shall first be

-12-

1  satisfied from all other assets (and/or proceeds thereof) of the Obligor Debtors and their estates;

2  and provided further however, that no person or entity (other than the Secured Parties in

3  accordance with this paragraph) shall receive the proceeds of Avoidance Actions until such time as

4  all Obligor Additional Credit Obligations have been satisfied in full.  For the avoidance of doubt,

5  nothing in this paragraph shall abrogate, limit, or otherwise diminish, alter, modify or otherwise

6  impact or affect any other term or condition of this Interim Order or any right of the Agent or other

7  Secured Party (or any finding with respect thereto) pursuant to this Interim Order, the Bankruptcy

8  Code (including, without limitation section 364(e) of the Bankruptcy Code) or applicable law.

9          16.    Non-Obligor Additional Credit Superpriority Claim.    The Agent, for the

10  benefit of the other Secured Parties, is hereby granted an allowed superpriority administrative

11  expense claim (the "Non-Obligor Additional Credit Superpriority Claim" and, together with the

12  Obligor Additional Credit Superpriority Claim, the "Additional Credit Superpriority Claims")

13  pursuant to section 364(c)(1) of the Bankruptcy Code for all Non-Obligor Additional Credit

14  Obligations, to the extent incurred by the Trustee, on behalf of the Non-Obligor Debtor and its

15  estate, having priority over any and all other claims against the Non-Obligor Debtor and its estate,

16  now existing or hereafter arising, of any kind whatsoever, including, without limitation, all

17  administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326,

18  328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code, whether

19  or not such expenses or claims may become secured by a judgment lien or other non-consensual

20  lien, levy or attachment, which Non-Obligor Additional Credit Superpriority Claim shall be

21  payable from and have recourse to all prepetition and postpetition property of the Non-Obligor

22  Debtor and its estate and all proceeds thereof.  Except as expressly set forth herein, no other

23  superpriority claims shall be granted or allowed in these Cases.  For the avoidance of doubt,

24  following entry of the Final Order, the Non-Obligor Additional Credit Superpriority Claim may be

25  satisfied from the proceeds of Avoidance Actions; provided, however, that the Non-Obligor

26  Additional Credit Superpriority Claim shall first be satisfied from all other assets (and/or proceeds

27  thereof) of the Non-Obligor Debtor and its estate; and provided further however, that no person or

28  entity (other than the Secured Parties in accordance with this paragraph) shall receive the proceeds

-13-

1    of Avoidance Actions until such time as all Non-Obligor Additional Credit Obligations have been

2    satisfied in full.  For the avoidance of doubt, nothing in this paragraph shall abrogate, limit, or

3    otherwise diminish, alter, modify or otherwise impact or affect any other term or condition of this

4    Interim Order or any right of the Agent or other Secured Party (or any finding with respect thereto)

5    pursuant to this Interim Order, the Bankruptcy Code (including, without limitation section 364(e)

6    of the Bankruptcy Code) or applicable law.

7            17.    Obligor Additional Credit Liens.

8            (i)To secure the Obligor Additional Credit Obligations, to the extent incurred by the

9    Trustee, on behalf of the Obligor Debtors and their estates, the Agent is hereby granted, for the

10   benefit of the other Secured Parties:

11           a.    a first priority, perfected security interest in, and lien, under section

12   364(c)(2) of the Bankruptcy Code upon all of the assets of each Obligor Debtor and of each

13   Obligor Debtor's estate, that, on or as of the Petition Date is not subject to valid, perfected, and

14   non-avoidable liens;

15           b.    a junior lien, under section 364(c)(3) of the Bankruptcy Code  upon

16   all of each Obligor Debtor and of each Obligor Debtor's estate, that is, as of the Petition Date,

17   subject to valid, perfected, and non-avoidable liens in favor of third parties except as set forth in

18   subparagraph (c) below; and

19           c.    a first priority, perfected priming security interest in and lien under

20   section 364(d)(1) of the Bankruptcy Code upon all collateral that also constitutes Prepetition

21   Collateral, in all cases senior to the (A) Prepetition Security Interests and (B) all other liens and

22   obligations secured by the Prepetition Collateral on a *pari passu* or junior basis to the Prepetition

23   Security Interests (collectively the "Prepetition Primed Obligations").

24           (ii)The liens created as described in clauses (a), (b), and (c) above (the "Obligor

25   Additional Credit Liens") shall cover all property and assets of the Obligor Debtors and their

26   estates of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing

27   or hereafter acquired or created, including, without limitation, all accounts, inventory, goods,

28   contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses

-14-

1   therefor, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters

2   of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property,

3   fixtures, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital

4   stock of the Obligor Debtors,[3] money, investment property, deposit accounts, all commercial tort

5   claims and other causes of action (including any and all actions arising under the Bankruptcy

6   Code), Cash Collateral (that does not include Non-Obligor Cash Collateral), all cash and non-cash

7   proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described

8   above, all property or assets that do not secure the Prepetition Primed Obligations, and, <u>following</u>

9   <u>the entry of the Final Order, the proceeds of Avoidance Actions</u> (collectively, the "Obligor

10  Postpetition Collateral").

11          (iii)The Obligor Additional Credit Liens shall be effective immediately upon the

12  entry of this Interim Order.

13          (iv)Except as provided in this Interim Order, the Obligor Additional Credit Liens

14  shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien,

15  security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of

16  the Bankruptcy Code or otherwise, or (ii) subject to any lien or security interest that is avoided and

17  preserved for the benefit of the Obligor Debtors' estates under section 551 of the Bankruptcy Code.

18          (v)The Obligor Additional Credit Liens shall be and hereby are fully perfected liens

19  and security interests, effective and perfected upon the date of this Interim Order without the

20  necessity of execution by the Trustee, on behalf of the Obligor Debtors, of mortgages, security

21  agreements, pledge agreements, financing agreements, financing statements or other agreements,

22  such that no additional steps need be taken by the Agent or other Secured Parties to perfect such

23  interests. Any provision of any lease, loan document, easement, use agreement, proffer, covenant,

24  license, contract, organizational document, or other instrument or agreement that requires the

25

26  [3] With respect to liens on the voting capital stock of foreign subsidiaries of Holdings, such liens
    securing the Obligor Additional Credit Obligations shall be limited to pledges that would not

27  result in deemed dividends to the United States Debtors pursuant to section 956 of the Internal
    Revenue Code, except as otherwise agreed by the Secured Parties.

28

-15-

1  consent or approval of one or more landlords, licensors, or other parties, or requires the payment of

2  any fees or obligations to any governmental entity, non-governmental entity or any other person, in

3  order for the Trustee, on behalf of any of the Obligor Debtors, to pledge, grant, mortgage, sell,

4  assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral,

5  shall have no force or effect with respect to the transactions granting the Agent, for the benefit of

6  the other Secured Parties, a priority security interest in such fee, leasehold or other interest or other

7  collateral or the proceeds of any assignment, sale or other transfer thereof, by the Trustee, on behalf

8  of any of the Obligor Debtors, in favor of the Agent, for the benefit of the other Secured Parties, in

9  accordance with the terms of this Interim Order.

10         (vi) The Obligor Additional Credit Liens, Obligor Additional Credit Superpriority

11  Claim, and other rights, benefits, and remedies granted under this Interim Order to the Agent, for

12  the benefit of the other Secured Parties, in connection with the Obligor Additional Credit

13  Obligations, shall continue in these Cases, in any superseding case or cases under the Bankruptcy

14  Code resulting from conversion of one or more of these Cases (a "Superseding Case") to the extent

15  permitted by applicable law, and, to the extent permitted by applicable law, following any

16  dismissal of the Cases, and such liens and claims shall maintain their priority as provided in this

17  Interim Order until all the Obligor Additional Credit Obligations have been indefeasibly paid in full

18  in cash and completely satisfied.

19         18.    Non-Obligor Additional Credit Liens.

20         (i)    To secure the Non-Obligor Additional Credit Obligations, to the extent

21  incurred by the Trustee, on behalf of the Non-Obligor Debtor and its estate, the Agent is hereby

22  granted, for the benefit of the other Secured Parties:

23         a.    a first priority, perfected security interest in, and lien, under section

24  364(c)(2) of the Bankruptcy Code upon all of the assets of the Non-Obligor Debtor and its estate,

25  that, on or as of the Petition Date is not subject to valid, perfected, and non-avoidable liens; and

26         b.    a junior lien, under section 364(c)(3) of the Bankruptcy Code upon

27  all of the Non-Obligor Debtor and its estate, that is, as of the Petition Date, subject to valid,

28  perfected, and non-avoidable liens in favor of third parties.

-16-

1        (ii)    The liens created as described in clauses (a) and (b) above (the "Non-Obligor

2  Additional Credit Liens" and, together with the Obligor Additional Credit Liens, the "Additional

3  Credit Liens") shall cover all property and assets of the Non-Obligor Debtor and its estate of any

4  kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter

5  acquired or created, including, without limitation, all accounts, inventory, goods, contract rights,

6  instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor,

7  general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit,

8  letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures,

9  leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of

10  the Non-Obligor Debtor,[4] money, investment property, deposit accounts, all commercial tort claims

11  and other causes of action (including any and all actions arising under the Bankruptcy Code), Non-

12  Obligor Cash Collateral, all cash and non-cash proceeds, rents, products, substitutions, accessions,

13  and profits of any of the collateral described above, and, following the entry of the Final Order, the

14  proceeds of Avoidance Actions (collectively, the "Non-Obligor Postpetition Collateral" and,

15  together with the Obligor Postpetition Collateral, the "Postpetition Collateral").

16        (iii)    The Non-Obligor Additional Credit Liens shall be effective immediately

17  upon the entry of this Interim Order.

18        (vii)Except as provided in this Interim Order, the Non-Obligor Additional Credit

19  Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any

20  other lien, security interest or claim existing as of the Petition Date, or created under sections 363

21  or 364(d) of the Bankruptcy Code or otherwise, or (ii) subject to any lien or security interest that is

22  avoided and preserved for the benefit of the Non-Obligor Debtor's estate under section 551 of the

23  Bankruptcy Code.

24

25

26  [4]  The Liens securing the Non-Obligor Additional Credit Obligations shall be limited to pledges
27      that would not result in deemed dividends to the United States Debtors pursuant to section 956 of
       the Internal Revenue Code, except as otherwise agreed by the Secured Parties.

28

1      (viii)The Non-Obligor Additional Credit Liens shall be and hereby are fully

2  perfected liens and security interests, effective and perfected upon the date of this Interim Order

3  without the necessity of execution by the Trustee, on behalf of the Non-Obligor Debtor, of

4  mortgages, security agreements, pledge agreements, financing agreements, financing statements or

5  other agreements, such that no additional steps need be taken by the Agent or other Secured Parties

6  to perfect such interests.  Any provision of any lease, loan document, easement, use agreement,

7  proffer, covenant, license, contract, organizational document, or other instrument or agreement that

8  requires the consent or approval of one or more landlords, licensors, or other parties, or requires the

9  payment of any fees or obligations to any governmental entity, non-governmental entity or any

10  other person, in order for the Trustee, on behalf of any Non-Obligor Debtor, to pledge, grant,

11  mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or

12  other collateral, shall have no force or effect with respect to the transactions granting the Agent, for

13  the benefit of the other Secured Parties, a priority security interest in such fee, leasehold or other

14  interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by the

15  Trustee, on behalf of any Non-Obligor Debtor, in favor of the Agent, for the benefit of the other

16  Secured Parties, in accordance with the terms of this Interim Order.

17      (iv)    The Non-Obligor Additional Credit Liens, Non-Obligor Additional Credit

18  Superpriority Claim, and other rights, benefits, and remedies granted under this Interim Order to

19  the Agent, for the benefit of the other Secured Parties, in connection with the Non-Obligor

20  Additional Credit Obligations, shall continue in these Cases, in any Superseding Case to the extent

21  permitted by applicable law, and, to the extent permitted by applicable law, following any

22  dismissal of the Cases, and such liens and claims shall maintain their priority as provided in this

23  Interim Order until all the Non-Obligor Additional Credit Obligations have been indefeasibly paid

24  in full in cash and completely satisfied.

25      (v)    For avoidance of any doubt, notwithstanding anything to the contrary in this

26  Interim Order, the Obligor Additional Credit Obligations shall be entitled to protection, security,

27  superpriority and payment only from property of the Obligor Debtors and the Non-Obligor

28

-18-

1    Additional Credit Obligations shall be entitled to protection, security, superpriority and payment

2    only from the property of the Non-Obligor Debtors.

3                    19.    <u>Authority to Execute and Deliver Necessary Documents</u>.

4                    (i)    All of the Additional Credit Liens and Obligor Debtors Protection Liens

5    (defined below) described herein shall be effective and perfected as of the date of the entry of this

6    Interim Order and without the necessity of the execution of mortgages, security agreements, pledge

7    agreements, financing statements or other agreements.

8                    (ii)    The Trustee, on behalf of each of the Debtors, is hereby further authorized to

9    perform all acts required and all of its obligations hereunder, and such other agreements as may be

10   required to give effect to the terms of the financing provided for herein.

11                   (iii)   All Additional Credit Obligations shall constitute valid and binding

12   obligations of the Trustee, on behalf of each of the applicable Debtors, enforceable against each of

13   the applicable Debtors' estates, and each of their successors and assigns, in accordance with the

14   terms of this Interim Order.  No obligation, payment, transfer, or grant of a security under this

15   Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or

16   under any applicable law or subject to avoidance, reduction, setoff, recoupment, offset,

17   recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims,

18   cross-claims, defenses, disallowance, impairment, or any other challenges under the Bankruptcy

19   Code or any other applicable foreign or domestic law or regulation by any person or entity.

20                   20.    <u>Protections for Prepetition Lenders Based on Use of Cash Collateral by</u>

21   <u>Obligor Debtors</u>.  The Secured Parties are hereby granted the following protections, pursuant to

22   sections 361, 507, 363(e), and 364(d)(1) of the Bankruptcy Code or otherwise, with respect to the

23   Prepetition Security Interests in the Prepetition Collateral for the consent of such Secured Parties to

24   the priming effectuated by the Obligor Additional Credit Liens, consent to the use of their

25   Prepetition Collateral (including Cash Collateral), consent to the transactions contemplated by the

26   Additional Credit Advances, and as adequate protection for the diminution in the value (each such

27   diminution, a "<u>Diminution in Value</u>") of the Prepetition Security Interests and Prepetition

28   Collateral, whether or not such Diminution in Value results from the sale, lease or use by the

-19-

1    Trustee of the Prepetition Collateral (including, without limitation, Cash Collateral), the priming of

2    the Prepetition Security Interests or the stay of enforcement of any prepetition security interest

3    arising from section 362 of the Bankruptcy Code, or any other diminution in value whatsoever after

4    the Petition Date ((i) through (ii) below shall be referred to collectively as the "Obligor Debtors

5    Protection Obligations"):

6              (i)    Obligor Debtors Protection Liens. The Agent, on behalf of itself and the

7    Secured Parties, shall be granted, for the reasons set forth above in this paragraph, solely to the

8    extent of any Diminution in Value, for the benefit of the Secured Parties, effective and perfected as

9    of the date of this Interim Order and without the necessity of the execution of mortgages, security

10   agreements, pledge agreements, financing statements or other agreements, valid, perfected,

11   postpetition security interests in and liens on all of the Postpetition Collateral, excluding the

12   proceeds of Avoidance Actions (together, the "Obligor Debtors Protection Liens"), subject and

13   subordinate only to the Permitted Liens and the Additional Credit Liens securing the Additional

14   Credit Obligations. The Obligor Debtors Protection Liens shall not at any time be

15   (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or

16   claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy

17   Code, or, with respect to liens and security interests only, section 552(b) of the Bankruptcy Code or

18   otherwise or (ii) subject to any lien or security interest that is avoided and preserved for the benefit

19   of the Debtors' estates under section 551 of the Bankruptcy Code.

20             (ii)   Obligor Debtors Protection Superpriority Claim. The Agent, on behalf of

21   itself and the Secured Parties, shall be granted, for the reasons set forth above in this paragraph,

22   solely to the extent of any Diminution in Value that is not satisfied by the Obligor Debtors

23   Protection Liens, a superpriority administrative expense claim (the "Obligor Debtors Protection

24   Superpriority Claim") against all Debtors immediately junior to the Additional Credit Superpriority

25   Claims, underlined provided that no entity shall receive or retain any payments, property, or other amounts in

26   respect of superpriority claims relating to the Prepetition Primed Obligations unless and until the

27   Additional Credit Obligations have indefeasibly been paid in cash in full.   For the avoidance of

28   doubt, nothing in this subparagraph shall abrogate, limit, or otherwise diminish, alter, modify or

-20-

1    otherwise impact or affect any other term or condition of this Interim Order or any right of the

2    Agents or the other Secured Parties (or any finding with respect thereto) pursuant to this Interim

3    Order, the Bankruptcy Code (including, without limitation section 364(e) of the Bankruptcy Code)

4    or applicable law.

5            21.    <u>Additional Protections</u>.  As further compensation for the consensual use of

6    the Prepetition Collateral (including Cash Collateral) by, and the discretionary provision of

7    Additional Credit Advances to, the Trustee, on behalf of the Debtors and their estates, the Agent,

8    for the benefit of the Secured Parties, shall receive from the Trustee:

9            (i)    <u>Protection Payments</u>.  In addition to any other payments required to be made

10    to the Agent and the Secured Parties hereunder, the Trustee shall pay an amount to the Agent equal

11    to all aggregate funds held in the Cash Collateral Accounts in excess of one-hundred ten

12    (110%) percent of the weekly fees and expenses accrued in accordance with, and subject to, the

13    Budget for any given week (the "<u>Expense Reserve</u>") at the end of such week commencing on the

14    date of entry of this Interim Order (collectively, the "<u>Protection Payments</u>").  All Protection

15    Payments shall be drawn by the Trustee on the Cash Collateral Accounts and sent to the Agent by

16    Wire Transfer to:

17                ABA # 021-000-018

18                The Bank of New York

19                New York, New York

20                Account # 890-0331-046

21                Credit to: Canadian Imperial Bank of Commerce, New

22                York Branch

23                For further credit to: Agented Loans

24                Account # 07-09611

25                Attention: Agency Services,

26    and shall be due within three (3) business days of the end of each weekly period along with an

27    accounting showing how the amount of the Protection Payment was calculated.  The receipt of the

28    Protection Payments shall be without prejudice to the Agent's rights to seek, by agreement with the

-21-

1   Trustee or order of the Court, at any time, a payment from the Cash Collateral Accounts (including

2   amounts set aside for the Expense Reserve), if the Agent believes that the aggregate funds in such

3   accounts is in excess of one-hundred ten (110%) percent of the of the weekly fees and expenses

4   accrued in accordance with, and subject to, the Budget for any given week.

5        (ii)    <u>Reporting Obligations</u>.  The Trustee and its retained professionals shall

6   prepare and keep detailed records on a daily basis ("<u>Collateral Records</u>") setting forth any and all

7   Additional Credit Advances and/or Prepetition Collateral (including Cash Collateral) used in

8   respect of each Debtor and its estate, including, without limitation, with respect to the funding of

9   services provided by the Trustee or any of its retained professionals to any Debtor and its estate in

10   connection with the preservation, maintenance, and liquidation of such Debtor's assets in

11   accordance with the Budget and this Interim Order.  The entries in the Collateral Records shall,

12   without limitation, (i) specify whether any amounts or funds collected or otherwise received by the

13   Trustee are attributable to any acts of the Trustee that were financed by the use of Additional Credit

14   Advances and/or Prepetition Collateral (including Cash Collateral) for the direct or indirect benefit

15   of the Non-Obligor Debtor and its estate, (ii) provide an estimate of the amount of Additional

16   Credit Advances and/or Prepetition Collateral (including Cash Collateral) used in accordance with

17   the Budget, and (iii) specify the amount of funds existing in the Obligor Cash Collateral Account,

18   the Non-Obligor Cash Collateral Account, and the Non-Obligor Account.  The Trustee shall

19   provide the Collateral Records for a given week to the Agent on a weekly basis on each Friday or

20   as otherwise requested by the Agent at any time.

21        (iii)    <u>Monitoring of Collateral</u>.  The Agent and its advisors shall be given

22   reasonable access for purposes of monitoring the business of the Debtors, the administration and

23   liquidation of the estates, and the value of the Prepetition Collateral under the Loan Documents and

24   the Postpetition Collateral.

25        (iv)    <u>Sale Consent</u>.  The Trustee shall obtain the consent of the Agent with respect

26   to any request by the Trustee to sell, liquidate or dispose of any property or assets that constitutes

27   Prepetition Collateral or Postpetition Collateral in an amount equal to or in excess of $10,000.

28

22.    <u>Reservation of Rights</u>.  Notwithstanding any other provision hereof to the contrary, the grant of the Additional Credit Liens, Additional Credit Superpriority Claims, and the Obligor Debtors Protection Obligations to the Secured Parties pursuant hereto is without prejudice to the right of the Secured Parties to seek different or additional adequate or other protection, including, without limitation, the current payment of postpetition interest (at the applicable default rate) and to seek payments under section 506(b) of the Bankruptcy Code.  Except as expressly provided herein, nothing contained in this Interim Order (including, without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Secured Parties.  The consent of the Secured Parties to the priming of the Prepetition Security Interests by the Obligor Additional Credit Liens (a) is limited solely to the Additional Credit Advances (excluding those provided with respect to the Trustee, on behalf of the Non-Obligor Debtor) and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Agent or the Secured Parties that, absent such consent, their respective interests in the Prepetition Collateral would be adequately protected pursuant to this Interim Order.  Nothing in this Interim Order shall constitute an admission that the Secured Parties are not entitled to payment under section 506(b) of the Bankruptcy Code.

23.    <u>Application</u>.  Except as provided in paragraph 21(i) of this Interim Order, and upon notice to the Agent, the Cash Collateral and/or Non-Obligor Cash Collateral, now or hereafter existing, and additional cash proceeds acquired from the postpetition liquidation, sale and/or disposition of the Prepetition Collateral, shall be deposited and maintained by the Trustee in the applicable Cash Collateral Accounts and distributed promptly upon receipt, in each respective case, by the Trustee as follows:

a.    First, in payment in full of the Obligor Additional Credit Obligations and Non-Obligor Additional Credit Obligations, as applicable;

b.    Second, in payment in full of all Prepetition Secured Obligations; and

c.    Third, to be disbursed pursuant to the orders of priorities set forth in section 507(a) of the Bankruptcy Code.

-23-

1    For the avoidance of doubt and notwithstanding anything to the contrary herein, upon a

2    Termination Event (defined below), all amounts existing in the Cash Collateral Accounts shall be

3    immediately released and distributed in accordance with this paragraph 23; provided, however, that

4    prior to a Termination Event, the Trustee is authorized to make payments solely from the Expense

5    Reserve in accordance with the Budget and this Interim Order.  Notwithstanding anything to the

6    contrary herein or in the Budget, under no circumstances may amounts designated for "rent" under

7    the Budget be used for any purpose other than the payment of rent to a landlord or lessor in

8    accordance with a final order of this Court requiring such payment to be made.  For the avoidance

9    of doubt, no rent or other amount may be paid to any landlord or lessor pursuant to section 365 of

10   the Bankruptcy Code or otherwise so long as an objection to the payment of such rent or other

11   amount is pending.

12            24.    Restriction on Use of Lenders' Funds.  Notwithstanding anything herein to

13   the contrary, no Additional Credit Advances, Cash Collateral, Non-Obligor Cash Collateral,

14   Prepetition Collateral, Postpetition Collateral, any other financial accommodations provided by the

15   Secured Parties, or any proceeds of the foregoing, or any portion of the Expense Reserve may be

16   used by any of the Trustee, the Debtors, their estates, any committee elected under section 705 of

17   the Bankruptcy Code, or any other person, party or entity to, in any jurisdiction anywhere in the

18   world, directly or indirectly (a) request authorization to obtain postpetition financing (whether

19   equity or debt) or other financial accommodations pursuant to section 364(c) or (d) of the

20   Bankruptcy Code, or otherwise, other than (i) from the Secured Parties or (ii) if such financing is

21   sufficient to indefeasibly pay all Prepetition Secured Obligations and Additional Credit Obligations

22   in full in cash and such financing is immediately so used; (b) assert, join, commence, support,

23   investigate, or prosecute any action for any claim, counter-claim, action, cause of action,

24   proceeding, application, motion, objection, defense, or other contested matter seeking any order,

25   judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, the

26   Releasees, with respect to any transaction, occurrence, omission, or action, including, without

27   limitation, (i) any action arising under the Bankruptcy Code; (ii) any so-called "lender liability"

28   claims and causes of action; (iii) any action with respect to the validity and extent of the Prepetition

-24-

1  Secured Obligations, the Additional Credit Obligations, the Additional Credit Superpriority

2  Claims, the Obligor Debtors Protection Obligations, or the validity, extent, perfection, and priority

3  of the Prepetition Secured Interests, Additional Credit Liens, or the Obligor Debtors Protection

4  Liens; (iv) any action seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize,

5  subordinate (whether equitable, contractual, or otherwise), recoup against, disallow, impair, raise

6  any defenses, cross-claims, or counter claims or raise any other challenges under the Bankruptcy

7  Code or any other applicable domestic or foreign law or regulation against or with respect to the

8  Prepetition Secured Interests, Additional Credit Liens, the Additional Credit Superpriority Claims,

9  or the Obligor Debtors Protection Obligations in whole or in part; (v) appeal or otherwise challenge

10  this Interim Order, the Final Order, the Loan Documents, or any of the transactions contemplated

11  herein or therein; and/or (vi) any action that has the effect of preventing, hindering, or delaying

12  (whether directly or indirectly) the Agent or the other Secured Parties in respect of their liens and

13  security interests in the Prepetition Collateral, Postpetition Collateral or any of their rights, powers,

14  or benefits hereunder or in the Loan Documents anywhere in the world; and/or (c) pay any claim of

15  a prepetition creditor except in accordance with this Interim Order and the Budget; provided

16  however, that the Trustee may use (in accordance with this Interim Order and the Budget), up to

17  $10,000 (the "Lien Investigation Fund") to investigate the Prepetition Security Interests and claims

18  of the Agent and the other Secured Parties under the Loan Documents, solely with respect to the

19  legality, validity, enforceability, perfection and priority of such Prepetition Security Interests, and

20  solely with respect to the amount of such claims, but may not use the Lien Investigation Fund to

21  initiate, assert, join, commence, support, or prosecute any actions or discovery with respect thereto,

22  or for any other purpose.

23          25.    Claims Stipulation Investigation Period Reservation of Rights.  Except as

24  expressly set forth below in the immediately following sentence, the stipulations set forth in

25  paragraph 4 of this Interim Order (together the "Claims Stipulation") and all of the terms and

26  conditions hereof shall be immediately and irrevocably binding on all persons and entities.

27  Notwithstanding anything herein or in the Loan Documents to the contrary, (i) until the day that is

28  21 days from the date of the Interim Hearing (the "Lien Investigation Termination Date"), the

1  Trustee and any other party in interest with proper standing shall be entitled to investigate the

2  Prepetition Security Interests and claims of the Agent and the other Secured Parties under the Loan

3  Documents, solely with respect to the legality, validity, enforceability, perfection and priority of

4  such Prepetition Security Interests, and solely with respect to the amount of such claims, in each

5  case solely with respect to the Obligor Debtors and their estates (collectively, the "Lien Claims")

6  and (ii) until a date to be determined at the Final Hearing (the "Other Claim Investigation

7  Termination Date"), the Trustee and any other party in interest with proper standing shall be

8  entitled to investigate any claims or causes of action against the Agent and the Secured Parties

9  other than the Lien Claims (collectively, the "Other Claims");[5] provided, however, that nothing

10  contained in this paragraph shall alter the restrictions contained in paragraph 24 hereof.  Any

11  assertion of claims or causes of action of the Trustee, on behalf of the Debtors or their estates,

12  against any of the Agent and/or the other Secured Parties must be made by (i) commencing an

13  adversary proceeding or (ii) filing a motion to obtain standing to pursue such an action (which

14  motion attaches the complaint or pleading that would initiate such action) on or before the Lien

15  Investigation Termination Date or the Other Claim Investigation Termination Date, as applicable,

16  and each Claim Stipulation shall remain binding and in full force and effect until a final order has

17  been entered invalidating such Claim Stipulation, and following the entry of such a final order,

18  such Claim Stipulation shall be invalidated only to the extent provided for in such final order.  If no

19  such action or motion is filed on or before the Lien Investigation Termination Date or the Other

20  Claim Investigation Termination Date, as applicable, all persons and entities shall be forever barred

21  from bringing or taking such action and the Claims Stipulations shall be permanently and

22  irrevocably binding upon all persons and entities.  Any Claim Stipulation that is not expressly

23  challenged in an adversary proceeding (or with respect to which authority to obtain standing has

24  not been requested as set forth above) or contested matter, as appropriate, before the Lien

25  Investigation Termination Date or the Other Claim Investigation Termination Date, as applicable,

26  _____

27  [5]  Nothing herein shall be interpreted as conferring on any person or entity standing to pursue any
    claim, cause of action or take any action on behalf of the Debtors or their respective estates.

28

-26-

1  shall remain in full force and effect and shall permanently and irrevocably bind all entities and

2  persons, despite the filing of any other adversary proceeding or motion in accordance with this

3  paragraph.

4       26.    Termination. Notwithstanding anything to the contrary contained herein, the

5  Trustee's right to use and the use of Cash Collateral and Additional Credit Advances shall expire

6  and the Secured Parties shall decline any further Additional Credit Advances, unless otherwise

7  permitted by the Agent in its sole discretion, on the earliest to occur of (the first such occurrence

8  being hereinafter referred to as the "Termination Event"):   (i) thirty (30) days following the entry

9  of the Interim Order, unless the Trustee and Secured Parties have agreed on a new budget and the

10  Secured Parties have agreed to extend the Trustee's right to use Cash Collateral and Additional

11  Credit Advances before the end of such thirty (30) day period; (ii) failure by the Trustee to retain

12  Hilco Industrial as liquidating agent, (iii) any motion filed by the Trustee seeking authorization to

13  operate the business of the Debtors pursuant to section 721 of the Bankruptcy Code without the

14  consent of the Secured Parties, (iv) the entry by the Bankruptcy Court or any other court reversing,

15  amending, supplementing, staying, vacating or otherwise modifying the terms of this Interim

16  Order; (v) the dismissal or conversion of any Cases; (vi) the entry by the Bankruptcy Court of an

17  order granting material relief from the automatic stay imposed by section 362 of the Bankruptcy

18  Code to any entities other than the Secured Parties with respect to acts against any of the

19  Postpetition Collateral, Prepetition Collateral or Cash Collateral or replacement liens granted

20  hereunder; (vii) any breach by the Trustee of the terms of this Interim Order; or (viii) upon notice

21  by the Agent to the Trustee terminating the right to use the Cash Collateral, in the Agent's sole

22  discretion, including, without limitation, with respect to any material diminution, depreciation, or

23  reduction in the value of Collateral measured as of the date of this Agreement.  On the date of the

24  Termination Event (the "Termination Date") and thereafter, the Trustee shall immediately cease

25  using any Cash Collateral and Additional Credit Advances.  From and after the Termination Date,

26  all accrued interest and fees and all other Prepetition Secured Obligations, Additional Credit

27  Obligations and Obligor Debtors Protection Obligations shall, in each instance, be immediately due

28  and payable and the Secured Parties may exercise any and all rights and remedies granted to them

-27-

1    herein or in the Loan Documents.  Except as otherwise provided herein, any liens and/or claims

2    granted to the Agent or the other Secured Parties pursuant to this Interim Order and all of the other

3    rights, benefits, powers and privileges afforded herein to the Agent and the other Secured Parties

4    shall survive and maintain their validity and priority as provided by this Interim Order and not be

5    modified, altered or impaired in any way by any other financing, extension of credit, incurrence of

6    indebtedness or any conversion of any of these Cases or dismissal of these cases or dismissal of

7    any of these Cases, or by any act or omission.

8           27.    <u>Rights Under Section 363(k)</u>.  The full amount of the Prepetition Secured

9    Obligations and/or Additional Credit Obligations may be used to "credit bid" for the assets and

10    property of the Debtors as provided for in section 363(k) of the Bankruptcy Code without the need

11    for further Court order authorizing the same.

12           28.    <u>Fees of Secured Parties' Professionals</u>.  All unpaid fees, costs, and expenses

13    of professionals and advisors of the Secured Parties, to the extent permitted under the Loan

14    Documents or this Interim Order, which fees shall include the reasonable fees and expenses of

15    Milbank, Tweed, Hadley and McCloy, LLP, Gowlings Lafleur Henderson LLP and Focus

16    Management, as well as any and all fees and expenses owed to the Agent under the Loan

17    Documents, shall be included and constitute part of the principal amount of the Additional Credit

18    Obligations and be secured by the Additional Credit Liens.  The Agent is hereby authorized to pay

19    all such fees, costs, and expenses and offset any amounts against the Postpetition Collateral until all

20    such fees, costs, and expenses are paid in full.

21           29.    <u>Collateral Rights</u>.  In the event that any person or entity that holds a lien or

22    security interest in the Prepetition Collateral or Postpetition Collateral that is junior and/or

23    subordinate to the Additional Credit Liens, the Obligor Debtors Protection Liens, or Prepetition

24    Security Interests receives or is paid the proceeds of the Prepetition Collateral or Postpetition

25    Collateral, or receives any other payment with respect thereto from any other source, prior to

26    indefeasible payment in full in cash and the complete satisfaction of all Additional Credit

27    Obligations and the Prepetition Secured Obligations, and termination of the commitments in

28    accordance with the Loan Documents, such junior or subordinate lienholder shall be deemed to

-28-

1   have received, and shall hold, the proceeds of any such Prepetition Collateral or Postpetition

2   Collateral in trust for the Secured Parties, and shall immediately turnover such proceeds to the

3   Agent for application in accordance with this Interim Order.

4        30.   Prohibition on Additional Liens.  Except as provided in this Interim Order,

5   the Trustee, on behalf of the Debtors, shall be enjoined and prohibited from, at any time during the

6   Cases until such time as the Additional Credit Obligations and Prepetition Secured Obligations

7   have been indefeasibly paid in full, granting liens on the Prepetition Collateral, Postpetition

8   Collateral or any portion thereof or any other collateral of the Debtors to any other entities,

9   pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to, *pari*

10  *passu* with or junior to the liens granted to the Agent, for the benefit of the other Secured Parties.

11       31.   No Waiver.  This Interim Order shall not be construed in any way as a

12  waiver or relinquishment of any rights that the Agents or the other Secured Parties may have to

13  bring or be heard on any matter brought before this Court

14       32.   Automatic Stay Modified.  The automatic stay provisions of section 362 of

15  the Bankruptcy Code hereby are, to the extent applicable, vacated, and modified to the extent

16  necessary without the need for any further order of this Court.  Nothing in this Interim Order shall

17  in any way restrict the scope of the Prepetition Security Interests, Additional Credit Liens, or

18  Obligor Debtors Protection Liens, or the priorities, rights of set-off, remedies or claims of the

19  Agent and the other Secured Parties and the automatic stay under section 362(a) is deemed

20  modified to permit the Agent to take any such actions and/or to file financing statements or a copy

21  of this Interim Order or any other evidence of the granting of the Additional Credit Liens or

22  Obligor Debtors Protection Liens.

23       33.   Charging Expenses Against Collateral.  No costs or expenses of

24  administration of the Cases or any future proceeding that may result therefrom shall be charged

25  against or recovered from the Prepetition Collateral, Postpetition Collateral or the Cash Collateral

26  pursuant to section 105, 506(c) or 552(b) of the Bankruptcy Code or any similar principle of law

27  without the prior written consent of the Agents, and no such consent shall be implied from any

28  other action, inaction, or acquiescence by the Agent or the other Secured Parties.  Notwithstanding

-29-

1    the previous sentence, following the occurrence of the Termination Date, the Trustee shall have the

2    right to seek to surcharge the Prepetition Collateral pursuant to section 105, 506(c) or 552(b) of the

3    Bankruptcy Code, subject to the right of the Agent and the other Secured Parties to raise any

4    defenses or objections with respect to such surcharge.

5        34.    Waiver.  Effective upon entry of this Interim Order, no person or entity shall

6    be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this

7    Court or otherwise) to marshal or otherwise control the disposition of Prepetition Collateral or

8    Postpetition Collateral.

9        35.    Subsequent Reversal or Modification.    This Interim Order is entered

10   pursuant to, inter alia, section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c),

11   and the Local Rules, granting the Secured Parties all protections afforded by section 364(e) of the

12   Bankruptcy Code.  If any or all of the provisions of this Interim Order are hereafter reversed,

13   modified, vacated or stayed, that action will not affect (i) the validity of any obligation,

14   indebtedness or liability incurred hereunder by the Trustee, on behalf of the Debtors and their

15   restates, to the Secured Parties or (ii) the validity and enforceability of any lien, claim, or priority

16   authorized or created under this Interim Order.    Notwithstanding any such reversal, stay,

17   modification, or vacatur, any postpetition indebtedness, obligation or liability incurred by the

18   Trustee, on behalf of the Debtors and their estates, to the Secured Parties, shall be governed in all

19   respects by the original provisions of this Interim Order, and the Secured Parties shall be entitled to

20   all the rights, remedies, privileges, and benefits granted herein with respect to all such

21   indebtedness, obligations or liability.

22       36.    Amendments.  This Interim Order cannot be amended or modified except by

23   a writing executed by all the parties hereto and approved by the Court.

24       37.    Adequate Notice.  The notice given by the Trustee, on behalf of the Debtors,

25   of the Motion and Interim Order was given in accordance with Bankruptcy Rules 2002 and 4001,

26   and the Local Rules, and was adequate and sufficient.  Under the circumstances, no further notice

27   was or is required.

28

-30-

1      38.   Binding Effect; Successors and Assigns. This Interim Order, including all

2 findings herein, shall be binding upon all parties in interest in these Cases, including, without

3 limitation, the Trustee, the Debtors, the Agent and the other Secured Parties, any committee elected

4 under section 705 of the Bankruptcy Code, and the Trustee, the Debtors, and their respective

5 successors and assigns, whether in these Cases, in any cases, or upon any dismissal of any such

6 cases and shall inure to the benefit of the Agent and the other Secured Parties, and the Debtors and

7 their respective successors and assigns; provided, however, that the consent of the Agent and the

8 other Secured Parties to permit the use of Cash Collateral and agreement to extend Additional

9 Credit Advances shall terminate upon any Termination Event.   In determining to make any

10 Additional Credit Advance, to permit the use of Cash Collateral or in exercising any rights or

11 remedies as and when permitted pursuant to this Interim Order or the Loan Documents, the Agent

12 and the other Secured Parties shall not (i) be deemed to be in control of the operations of the

13 Debtors, or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or

14 estates. Each stipulation, admission and agreement contained in this Interim Order shall also be

15 binding upon all other parties in interest, including, any committee elected under section 705 of the

16 Bankruptcy Code, under all circumstances and for all purposes.

17      39.   Final Hearing Date. The Final Hearing to consider the entry of the Final

18 Order approving the relief sought in the Motion shall be held on _____, 2011 at _____

19 before the Honorable Richard M. Neiter at the United States Bankruptcy Court for the Central

20 District of California, Los Angeles Division.

21      40.   Jurisdiction. This Court has and will retain jurisdiction to enforce this

22 Interim Order according to its terms.

23                                     \* \* \* \*

24

25

26

27

28

-31-

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2029 Century Park East, Third Floor, Los Angeles, California 90067-2904

A true and correct copy of the foregoing document described as **EXHIBIT "2" TO EMERGENCY MOTION FOR ORDER: (1) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO BUDGET; (2) AUTHORIZING CHAPTER 7 TRUSTEE TO OBTAIN POST-PETITION FINANCING, (3) PROVIDING ADEQUATE PROTECTION IN THE FORM OF REPLACEMENT LIENS AND SUPERPRIORITY STATUS, (4) SCHEDULING A FINAL HEARING; (5) APPROVING PROCEDURES FOR HANDLING RECLAMATION CLAIMS; (6) AUTHORIZING PAYMENT TO JOINT PAYEES OF CHECKS; (7), AUTHORIZING EMPLOYMENT OF FORMER CRO AND OTHER KEY EMPLOYEES; (8) APPROVING EMPLOYMENT OF KENNETH B. ROELKE AS FIELD AGENT; (9) AUTHORITY TO USE PRE-PETITION CREDIT CARD MERCHANT ACCOUNTS; (10) APPROVING MARKETING/LIQUIDATION AGENT AND (11) SUCH OTHER RELIEF AS APPROPRIATE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _May 25, 2011_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☑ Service information continued on attached page

**II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):** On _May 25, 2011_, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**III.    SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _May 25, 2011_, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
Served By Personal Delivery
Hon. Richard M. Neiter, U.S. Bankruptcy Court, 255 E. Temple Street, Los Angeles, CA 90012, Bin outside of Suite 1652

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 25, 2011 | Cindy A. Sandino | |
|---|---|---|
| _Date_ | _Type Name_ | _Signature_ |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_August 2010_
370216.01 [XP] 1130504A

# F 9013-3.1.PROOF.SERVICE

**ADDITIONAL SERVICE INFORMATION (if needed):**

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING("NEF")

Deana M Brown     dbrown@milbank.com
David A Gill (TR)     mlr@dgdk.com, dgill@ecf.epiqsystems.com
Eric D Goldberg     egoldberg@stutman.com
Christopher O Rivas     crivas@reedsmith.com
Steven J Schwartz     sschwartz@dgdk.com
United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
Andrea M Valdez     avaldez@fulbright.com


## II.   BY U.S. MAIL AND EMAIL


### By U.S. Mail:

Debtor
United States Aluminum of Canada Limited
767 Monterey Pass Road
Monterey Park, CA 91754

U.S. Trustee
Office of the U.S. Trustee
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

### By Email:

Howard B. Grobstein
Joshua Teeple
Crowe Horwath, LLP
15233 Ventura Boulevard
Ninth Floor
Sherman Oaks, CA 91403
**Via Email -**
**Howard.Grobstein@crowehorwath.com**
**Joshua.Teeple@crowehorwath.com**

Neil J. Minihane
Turn Works LLC
P.O. Box 60213
Colorado Springs, CO 80906-0213
**Via Email - nminihane@turnworksllc.com**

Mike Norring
Accounting Manager
International Management Services Group
767 Monterey Pass Road
Monterey Park, CA 91754
**Via Email - mikenorring@intlmsg.com**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Attorney for Lenders
Samuel Khalil, Esq.
Milbank Tweed et al LLP
1 Chase Manhattan Plaza
New York, NY 10005
**Via Email - SKhalil@milbank.com**

Attorneys for Canadian Imperial Bank of
Commerce, New York Agency, as
Administrative Agent Gregory A. Bray, Esq.
Matthew S. Barr, Esq.
Milbank Tweed Hadley & McCloy LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017
**Via Email – gbray@milbank.com**
**mbarr@milbank.com**

Barrey D. Davis
Focus Management Group
11400 West Olympic Blvd, Ste. 200
Los Angeles, CA 90064
**Via Email - b.davis@focusmg.com**

Jeffrey Alan Lipkin
Willkie Farr & Gallagher, LLP
787 Seventh Avenue
New York, NY 10019-6099
**Via Email - alipkin@willkie.com**

Counsel RB Capital, LLC
Adam Reich
**Via Email - areich@counselrb.com**

Attorneys for District Council 16,
International Union of Painters and Allied
Trades
c/o Christian L. Raiser
Weinberg Roger & Rosenfeld
1001 Marina Village Parkway, Ste. 200
Alameda, CA 94501-1091
**Via Email –**
**bankruptcycourtnotice@uioncounsel.net**
**craisner@unioncounsel.net**
**jmazur@unioncounsel.net**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.