RICHARD K. DIAMOND (State Bar No. 070634)
rdiamond@dgdk.com
STEVEN J. SCHWARTZ (State Bar No. 200586)
sschwartz@dgdk.com
DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, California 90067-2904
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735

[Proposed] Attorneys for David A. Gill,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>INTERNATIONAL ARCHITECTURAL GROUP, LLC,<br><br>    Debtor.<br><br>☒ Affects all Debtors<br><br>☐ Affects the following Debtor(s): | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:11-bk-30486-RN<br>Case No. 2:11-bk-30496-RN<br>Case No. 2:11-bk-30504-RN<br>Case No. 2:11-bk-30507-RN<br><br>Chapter 7<br><br>Jointly Administered Cases<br><br>**NOTICE OF MOTION AND TRUSTEE'S MOTION FOR THE ENTRY OF AN ORDER (A) APPROVING PROCEDURES FOR SALE OF ESTATE PROPERTY; (B) APPROVING THE TERMS OF EMPLOYMENT OF THE AUCTIONEER/SALES AGENT; (C) SCHEDULING AN AUCTION FOR THE SALE; (D) AUTHORIZING THE SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS WITHOUT FURTHER HEARING; AND (E) GRANTING RELATED RELIEF;  MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID A GILL; DECLARATIONS OF AUCTIONEERS/SALES AGENTS RE DISINTERESTEDNESS**<br><br>Hearing:<br>Date:   June 7, 2011<br>Time:   2:00 p.m.<br>Ctrm:   1645<br>    255 E. Temple St.<br>    Los Angeles, CA 90012 |

- 1 -

1

2

3

4

) Proposed Auction:
) Date:  June 21, 2011
) Time:  11:00 a.m.
) Place:  Intercontinental Hotel
)            2151 Avenue of the Stars
)            Los Angeles, California 90067

5   **TO THE HONORABLE RICHARD M. NEITER, UNITED STATES BANKRUPTCY**

6   **JUDGE, THE DEBTOR AND ITS COUNSEL, THE OFFICE OF THE UNITED STATES**

7   **TRUSTEE, SECURED CREDITORS, ALL CREDITORS ON THE DEBTORS'**

8   **CREDITOR MATRIX; CREDITORS HOLDING THE TWENTY LARGEST**

9   **UNSECURED CLAIMS, PARTIES REQUESTING SPECIAL NOTICE, ALL ENTITIES**

10  **THAT HAVE EXPRESSED TO THE TRUSTEE AN INTEREST IN PURCHASING THE**

11  **ASSETS, ALL ENTITIES KNOWN TO HAVE ASSERTED ANY INTERESTS IN OR**

12  **UPON THE ASSETS, AND OTHER INTERESTED PARTIES:**

13          **PLEASE TAKE NOTICE** that on June 7, 2011 at 2:00 p.m., or soon thereafter as the

14  matter may be heard, in Courtroom "1645" of the United States Bankruptcy Court, 255 E. Temple

15  Street, Los Angeles, California, David A. Gill, Chapter 7 Trustee ("Trustee") of the above jointly

16  administered chapter 7 estates of <u>International Architectural Group, LLC</u> (2:11-bk-30486-

17  RN)("IAG"), <u>International Architectural Products, Inc.</u> (2:11-bk-30496-RN)("IAP"), <u>International</u>

18  <u>Management Services Group, Inc.</u> (2:11-bk-30504-RN)("ISMG") and <u>United States Aluminum of</u>

19  <u>Canada</u> (2:11-bk-30507-RN)("USAC") (collectively, the "Debtors"), will and hereby does move

20  the court (the "Motion") pursuant to sections 105 and 363 of the United States Bankruptcy Code,

21  11 U.S.C. §§ 101-1530, as amended (the "Bankruptcy Code"), Rules 2002, 6004, 6005 and 9014 of

22  the Federal Rules of Bankruptcy Procedure (each a "Bankruptcy Rule," and collectively, the

23  "Bankruptcy Rules"), and Local Bankruptcy Rule 6004-1, for approval of certain procedures to

24  conduct a sale via public auction of substantially all of the assets of the Debtors (other than certain

25  exceptions identified herein) (the "Assets"), and for approval, without further hearing, of the sale of

26  the Assets to the highest and best bidder(s) that comply with the applicable procedures.

27  Specifically, the Trustee seeks an order:

28

- 2 -

1.     approving the proposed Bidding and Sale Procedures (the "Sale Procedures") generally described herein and set forth more fully in Exhibit "A" attached to the Declaration of David A. Gill (the "Trustee's Declaration") and incorporated therein by reference;

2.     approving the terms of employment of Hilco Industrial, LLC, Hilco Real Estate LLC and Counsel RB Capital LLC (collectively, "the Sales Agent") as set forth in the Consulting And Marketing Services Agreement for Real Property and Other Assets (the "Consulting Agreement") attached to the Trustee's Declaration, marked as Exhibit "B" and incorporated therein by reference;

3.     pursuant to Local Bankruptcy Rule 1001-1(d), amending the requirements of Local Bankruptcy Rule 6004-1(c) and (d) which appear to provide that sales subject to overbidding shall be set for hearing in court, and instead, authorizing and setting June 21, 2011 at 11:00 a.m. as the date for a sale by public auction of the Assets to be conducted by, to take place at the Intercontinental Hotel, 2151 Avenue of the Stars, Los Angeles, California 90067 (the "Auction") or such other date(s), time(s) and place(s) as may be announced at said Auction or as to which advance notice is given to those entitled thereto;

4.     approving the sale of the Assets to the highest and best bidder(s) at the Auction, as is and where is, with no representations or warrantees, free and clear of all liens, claims, interests and encumbrances, pursuant to sections 105 and 363(b),(f),(h) and (m) of the Bankruptcy Code without further hearing;

5.     approving the form of the notice of the Auction, and the manner of service of same, which shall include the following: (a) service of this Notice of Motion on all creditors, via regular mail by June 3, 2011; (b) service of this Notice of Motion and the Motion on the secured creditors, the twenty largest unsecured creditors, the landlords, the prospective bidders and interested parties and the United States Trustee by e-mail (for those who have consented to ECF service), facsimile and/or Overnight Mail, and (c) advertising the auction date and time in the Wall Street Journal, National and on-line editions and/or such other publications and internet sites as the Auctioneer/Sales Agent deems necessary or appropriate, including but not limited to the website of Danning, Gill, Diamond & Kollitz, LLP;

- 3 -

370466.01 [XP]

1130496A

1      6.     authorizing the Trustee to abandon such Assets as are not sold at the Auction and to

2 which the Trustee determines, in his business judgment, are burdensome and of inconsequential

3 value or benefit to the estates, by service of notice of abandonment upon the secured creditors,

4 parties requesting special notice, the United States Trustee, and the landlord for each location in

5 which Assets are to be abandoned; and

6      7.     granting such other relief as is fair and equitable.

7      **PLEASE TAKE FURTHER NOTICE** that the proposed Sale Procedures, more

8 specifically detailed in Exhibit "A" to the Trustee's Declaration, are summarized as follows:

9      The Trustee contemplates a multi-stage procedure commencing with a public auction in Los

10 Angeles on June 21, 2011 at 11:00 a.m. At the public auction, the Assets will be offered in

11 individual "Lots" in descending order, as follows: (1) a bulk auction of all of the Assets of the

12 Debtors, including inventory, equipment, intellectual property and associated receivables; (2) a sale

13 of the Debtors' individual "business units," consisting of United States Aluminum Corporation,

14 International Window corporation, International Extrusion Corporation; and Raco Interior Products

15 Group, along with the Assets of each respective business unit; (3) the sale of any or all of the

16 manufacturing facilities, including Waxahachie, TX (which includes the real estate), Vernon, CA,

17 South Gate, CA, Hayward CA, Chicago, IL, Langley, British Columbia, and Rock Hill, SC; (4) all

18 of the inventory assets; (5) all machinery and equipment, (6) office furniture and computer

19 equipment located at corporate headquarters in Monterey Park, California; and (7) real property

20 located in Waxahachie, TX, certain farmland acreage adjacent to Waxahachie, TX, and real

21 property located in Alhambra, California. The Trustee, with the recommendation of the Sales

22 Agent and the consent of the Lenders, shall accept such combination of bids that will maximize the

23 return to the estates. All sales will be "as is" and "where is," with no representations or warranties.

24      The Trustee reserves the right to offer the property of the estate as one or more lots, in bulk,

25 or any combination thereof; to reject bids which in his opinion are insufficient or do not conform to

26 the terms of the sale; and without further notice, except as orally announced at said sale or

27 continuance thereof, to continue the sale from time to time and place to place. There will be no

28 purchase agreement with any buyer inconsistent with the terms of sale as set forth herein, which

1  will be announced at the auction sale (except for Bulk Bids as that term is defined in the Sale

2  Procedures).

3        No further hearing or order of Court shall be required to conclude a sale to the high bidder

4  for a lot or lots or for the sale of the assets in bulk; however the Trustee reserves the right to seek

5  such an order if he deems it to be necessary.  No additional notice will be sent to creditors of entry

6  of an order approving the Motion or otherwise, other than those parties who request special notice

7  pursuant to the procedures set forth in the Order Limiting Notice served concurrently herewith.

8        A Report of Sale as required by FRBP 6004(f)(1) will be filed and served not later than 21

9  days after the date of the sale, or sales.

10        Complete bidding instructions are as set forth in the Bidding and Sale Procedures attached

11  as Exhibit "A" to the Trustee's Declaration.  Prospective bidders are encouraged to read the entire

12  Bidding and Sale Procedures and not rely solely upon the general summary contained herein.

13        **NOTICE IS HEREBY FURTHER GIVEN** that pursuant to Local Bankruptcy Rules

14  6004-1(b) and 9013-1, any parties seeking to object to the relief sought must, <u>not later than 1 day</u>

15  <u>before the hearing date</u>, file a response with the Clerk of the Bankruptcy Court, 255 E. Temple

16  Street, Los Angeles, California.  Papers filed in opposition to the motion must be served by

17  personal delivery, messenger, fax or email.  A judge's copy of the opposition must be served on the

18  judge in chambers in accordance with LBR 5005-2(d).

19

20  Dated: June 2, 2011                  DANNING, GILL, DIAMOND & KOLLITZ, LLP

21

22

23                                By:
                                 STEVEN J. SCHWARTZ

24                                   Attorneys for David A. Gill, Chapter 7
                               Trustee

25

26

27

28

370466.01 [XP]                                               1130496A

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION

4      The Trustee has previously obtained authority of the court to retain Hilco Industrial, LLC,

5  Hilco Real Estate LLC  and Counsel RB Capital LLC , auctioneer and sales agent (hereinafter,

6  "Sales Agent") to quickly market and sell the assets of the above-captioned estates, in an effort to

7  capitalize on the going concern values of the businesses which are now chapter 7 debtors.  By this

8  Motion, the Trustee is seeking approval of the terms of employment and procedures for conducting

9  a structured, multi-tiered public auction of the Assets of the estates with a view toward maximizing

10  their value.

11

### II.

12

### FACTS

13      1.      The bankruptcy cases of International Architectural Group, LLC (2:11-bk-30486-

14  RN)("IAG"), International Architectural Products, Inc. (2:11-bk-30496-RN)("IAP"), International

15  Management Services Group, Inc. (2:11-bk-30504-RN)("ISMG") and United States Aluminum of

16  Canada (2:11-bk-30507-RN)("USAC") (collectively, the "Cases") were commenced on May 11,

17  2011 (the "Petition Date") when four affiliated companies (the "Debtors") filed voluntary Chapter

18  7 petitions in the United States Bankruptcy Court for the Central District of California.  On the

19  Petition Date, David A. Gill (the "Trustee") was appointed as the Interim Trustee of the Cases.  The

20  Cases were filed on an emergency basis and as of this time no bankruptcy schedules or statements

21  of financial affairs have been filed.

22      2.      The Debtors owned and operated an integrated building products manufacturing

23  business consisting of diversified lines of aluminum and vinyl building products.  The operations

24  spanned the United States and operations and assets also located in Canada.  Operations were

25  conducted by two of the Debtors, USAC, and IAP,  the latter through a series of subsidiary

26  companies/divisions which were divided into three primary business groups: Residential Products,

27  Commercial Products and Aluminum Extrusion operations.  The operations of both Debtors

28  apparently crossed corporate lines.   The principal secured creditors were a group represented by

- 6 -

1    Canadian Imperial Bank of Commerce, New York Agency ("CIBC") as agent. They are herein

2    described jointly and severally as "Lenders."

3        3.    A simple organization chart, of this not at all simple organization is attached hereto,

4    marked as Exhibit "C" and incorporated herein by this reference. A brief description of the various

5    divisions and entities follows.

6        4.    The Residential Products Group operated as International Window Corporation

7    ("IWC"), International Window-Northern California and International Window Corporation

8    Arizona Inc. It manufactured and distributed vinyl and aluminum windows and doors for

9    residential and housing markets. It operated in two locations in Southgate and Hayward California

10    along with third facility in Phoenix, Arizona, which was closed pre-petition.

11        5.    The Commercial Products Group included eight divisions, as follows:

12            a.    Two of the Commercial Products Group divisions, United States

13    Aluminum of Canada Limited- Langley and United States Aluminum of Canada Limited- Guelph

14    were divisions of USAC, the Canadian entity. These divisions manufactured and distributed

15    architectural aluminum to the commercial construction industry.

16            b.    The "United States Aluminum" American Divisions (the "USA

17    Divisions") consisted of United States Aluminum Corporation, United States Aluminum

18    Corporation-Illinois, United States Aluminum Corporation-Texas, United States Aluminum

19    Corporation-Central Warehouse, and United States Aluminum Corporation-Carolina. The USAC

20    and USA Divisions operated at 12 locations total in 11 states and in Langley, Ontario, Canada. Of

21    those locations, five were distribution sites, and seven were manufacturing sites. USAC and IAP

22    lease these premises, and have one or more subleases.

23            c.    RACO Interior Products, Inc. produced interior aluminum door

24    frames and window systems for commercial office applications. It operated in three Texas

25    locations, Waxahachie, Houston and Dallas. The property in Waxahachie is owned by IAP.

26        6.    The Extrusion Products Group consisted of one division, International Extrusion

27    Corporation-Texas ("IEC"), which produced extruded aluminum parts for the other business units

28

- 7 -

1 | and outside third parties (revenue was 50% internal and 50% external). It is located on the IAP-

2 | owned facility in Waxahachie, Texas at 202 Singleton Drive.

3 |     7.    A schedule of the Trustee's best estimate of assets of the estates is attached to the

4 | Trustee's Declaration as Exhibit "D." Title Reports containing general and legal descriptions of

5 | two of the three parcels of owned real property to be offered in the Auction, the so called

6 | "Waxahachie Texas Real Property" and the Alhambra Property, are attached to the Trustee's

7 | Declaration, marked as Exhibits "E" and "F," respectively, and incorporated herein by this

8 | reference. The third property is farmland adjacent to the Waxahachie Texas Real Property

9 | described as "N/E/C of South Interstate 35E & Solon Road Waxahachie, Ellis County, Texas

10 | 75165 ORG File No. A07-144 (the "Waxahachie Farmland"). The Waxahachie Farmland is

11 | comprised of a 1,366,782+- square foot (31.377+- acre) irregular shaped site situated at the

12 | northeast corner of the intersection of the Interstate 35E service road and Solon Road, to the west

13 | of the United States Aluminum industrial facility.

14 |     8.    The Sales Agent has recommended, and the Trustee and the Lenders have agreed,

15 | that a prompt Auction of all of the Assets is the best possible manner in which to maximize the

16 | value of the Assets of the estate while minimizing the administrative expenses associated with the

17 | preservation thereof. It is possible that a very prompt and widely advertised sale may generate

18 | sales of portions of the businesses of the Debtors as going concerns, rather than liquidations. If this

19 | is successful, this would be beneficial to creditors, as it is believed that going concern sales would

20 | generate a higher value than the piecemeal sale of assets. Nonetheless, should no going concern

21 | sales result, it is nevertheless incumbent upon the Trustee to liquidate the Assets in an organized

22 | manner and as expeditiously as possible, so as to vacate the properties as early as possible,

23 | especially the leased premises, which continue to incur post-petition administrative rent.

24 |     9.    On May 26, 2011 at 10:30 a.m. (the "Emergency Hearing"), the Court heard and

25 | considered the Trustee's Emergency Motions for interim use of cash collateral, post-petition

26 | financing and other relief (the "Omnibus Emergency Motion"). At that hearing, the Court

27 | approved many aspects of the Omnibus Emergency Motion, including the employment of the Sales

28 | Agent (subject to a showing of disinterestedness on notice to the 20 largest unsecured creditors), in

1  accordance with the terms of the Consulting and Marketing Services Agreement for Real Property

2  and Other Assets, a copy of which is attached to the Trustee's Declaration, marked as Exhibit "B"

3  and incorporated herein by this reference.  Attached to this Motion are declarations of Joseph

4  Malfitano and Adam M. Reich (collectively, the "Sales Agent's Declarations") which demonstrate

5  that the Sales Agent is a "disinterested person" as that term is defined in Section 101(14) of the

6  Bankruptcy Code, and otherwise comply with applicable requirements.

7        10.    At the Emergency Hearing and at a subsequent telephonic hearing on May 31, 2011,

8  the Court approved (with the consent of the Lenders), the terms for interim use of cash collateral to

9  facilitate an immediate liquidation of assets, hopefully on a going concern basis where possible.

10  The court contemplated a sale to commence on or about June 21, 2011.

11        11.    The Sales Agent has recommended the Sales Procedures which are attached to the

12  Trustee's Declaration, marked as Exhibit "A" and incorporated herein by this reference.  A

13  summary of that Sales Procedure is contained in the Notice portion of this document.

14  **III.**

15  **ARGUMENT**

16  **A.**    **The Sale Procedures Are an Appropriate Means of Maximizing Value**

17        After notice and a hearing, a trustee may sell property of the estate outside the ordinary

18  course of its business.  11 U.S.C. § 363.  In order to obtain approval of a proposed sale of assets, a

19  debtor or trustee usually must show that the proposed purchase price is the highest and best offer

20  available under the circumstances of the case.  See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In

21  re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales,

22  "a primary object of the code [is] to enhance the value of the estate at hand"); In re Integrated Res.,

23  Inc., 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that

24  the ... Debtors' duty with respect to such sales is to obtain the highest price or greatest overall

25  benefit possible for the estate.") (quoting Cello Bag Co. v. Champion Int'l Corn (In re Atlanta

26  Packaging Prods., Inc.), 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

27        In connection with sales of assets outside of the ordinary course of business, bankruptcy

28  courts frequently approve competitive bidding procedures as a means of ensuring that such sales

- 9 -

                                                                   1130496A

1  will generate the highest and best returns to the debtor.  See, e.g., Doehring v. Crown Corp. (In re

2  Crown Corp.), 679 F.2d 774, 775 (9th Cir. 1982) (district court required specific minimum overbid

3  amounts, deposits, and comparable deal terms to be used by all overbidders); In re Crowthers

4  McCall Pattern, Inc., 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990) (court entered order requiring that

5  overbids be made in specified minimum increments with deposits).

6         The Trustee submits that sufficient cause exists to approve the proposed Sale Procedures.

7  The Trustee hired Sales Agent in order to assist with the liquidation of assets associated with a

8  specific industry, but located in over 20 locations throughout the United States and Canada.  The

9  Trustee has been approached by numerous potential buyers, many of whom are interested in the

10 Debtors' assets in different quantities, locations and types.  Fortunately, the Debtors' industry is

11 narrow enough to reach a targeted group of potential bidders on a relatively short notice.

12 Conducting a one-time auction of substantially all of the assets of the Debtors, with potentially all

13 of the "industry players" in one room is, in the Trustee's business judgment, the best and most

14 effective means of maximizing the value of the Assets.  Moreover, time is of the essence, given that

15 all but two of the Debtors' locations are owned, and rent, utilities and other costs continue to accrue

16 at an alarming rate.  Accordingly, the Trustee believes that the strategy recommended by the Sales

17 Agent is in the best interest of the estate and should be approved.

18        **B.    The Proposed Sale Is a Proper Exercise of the Trustee's Reasonable Business**

19 **Judgment.**

20        Section 363(b)(1) of the Bankruptcy Code provides that "the trustee, after notice and a

21 hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate.

22 11 U.S.C. § 363(b)(1).  Courts interpret section 363 to require only that such sale or use of property

23 be within the sound judgment of the trustee to which the court gives great deference.  See, e.g., In

24 re Moore, 110 B.R. 924 (Bankr. C.D. Cal. 1990); In re Canyon P'ship, 55 B.R. 520 (Bankr. S.D.

25 Cal. 1985); see also Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 289 (9th

26 Cir. BAP 2005) (trustee's position is afforded deference, "particularly where business judgment is

27 entailed in the analysis"); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (9th Cir. BAP

28 1988) ("[T]here must be some articulated business justification for using, selling, or leasing the

- 10 -

1   property outside the ordinary course of business … Whether the proffered business justification is

2   sufficient depends on the facts of the case.")

3          As stated by the Bankruptcy Appellate Panel in In re Walter, the bankruptcy court should

4   consider all salient factors pertaining to the proposed transaction and accordingly, act to further the

5   diverse interests of the debtor, creditors, and equity holders alike. Id. 83 B.R. at 20.  Among other

6   factors, courts should consider the consideration to be paid, the financial condition and needs of the

7   debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to be sold

8   would decline in value if left in the debtor's possession.  See, Equity Funding Corp. of Am. v. Fin.

9   Assocs. (In re Equity Funding Corp.), 492 F.2d 793, 794 (9th Cir. 1974) (affirming trial court's

10  finding that the proposed sale of the debtor's assets would be in the best interest of the estate in

11  light of impending deterioration of market value of the debtor's assets).

12         As evidenced in the Trustee's Declaration, the Trustee has considered each of the relevant

13  factors with respect to the proposed Auction.  Based on these factors, the Trustee submits that the

14  following justifications demonstrate that the proposed Auction is an appropriate exercise of

15  business judgment and is in the best interest of the estates.

16              1.    The Auction Will Ensure That The Highest Price Possible Is Obtained For

17  the Assets.

18         As set forth in the Trustee's Declaration, the Trustee believes that the Sale Procedures

19  recommended by the Sales Agent, coupled with the targeted marketing of the Debtors' industry,

20  will yield the best possible return on the Assets, by making it possible to sell the assets as going

21  concerns and/or in bulk and fostering bidding among competitors.

22              2.    The Sale Will Likely Increase the Recovery to Unsecured Creditors.

23         In each case except USAC, the Trustee has been operating with cash collateral of the

24  secured creditors.  There are no operations, thus no new money is being generated.  The only hope

25  for a recovery to unsecured creditors is to maximize the liquidation value of the Assets.  While a

26  recovery for unsecured creditors on account of liquidation of assets is not a certainty, taking quick,

27  targeted action to liquidate the Assets while minimizing administrative expenses, particularly

28  administrative rent and utilities, represents the best possible option for unsecured creditors of this

1  estate.  It also maximizes the possibility of going concern sales, particularly if real property lessors

2  cooperate.

3        3.        The Sales Do Not Rely On the Creditworthiness of the Buyers.

4        Bidders are required to pre-qualify to participate and bid at the Auction, by delivering to the

5  Sales Agent a good faith deposit equal to ten percent of the intend opening bid, as well as a

6  demonstration of the ability to close a proposed transaction in cash.

7        4.        The Value of the Assets Will Decline Over Time.

8        The Trustee, the Sales Agent and the Lenders all agree that the value of the Assets is much

9  greater if they can be sold as a form of "going concern."  While the scrap value of the raw materials

10  may be determined by the market, the value of the machinery and equipment is far greater in place

11  than if it needs to be removed and moved to another location.  Moreover, the net value of the

12  Assets decreases as the administrative expenses associated with their preservation continues to

13  increase.

14  **C.    The Court Should Authorize the Sale Free and Clear of Liens, Claims, Interests**

15  **and Encumbrances.**

16        The Trustee requests that the Court approve the sale of the Assets free and clear of all

17  interests, with any such interests to attach to the sale proceeds with the same validity and priority as

18  existed prior to the sales, or to be paid in full.

19        Section 363(f) of the Bankruptcy Code expressly authorizes a trustee to sell property

20  outside of the ordinary course of business "free and clear of any interest in such property of an

21  entity" if any one of the five following conditions is met:

22        (a)      applicable non-bankruptcy law permits sale of such property free and clear of such

23  interest;

24        (b)      such entity consents;

25        (c)      such interest is a lien and the price at which such property is to be sold is greater

26  than the aggregate value of all liens on such property;

27        (d)      such interest is in bona fide dispute; or

28

- 12 -

1    (e)    such entity could be compelled, in a legal or equitable proceeding, to accept a

2  money satisfaction of such interest.

3    Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, any one of

4  these five conditions provides authority to sell the Assets free and clear of liens. See Citicorp

5  Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988).

6    Here, the Lenders not only consent to the sale of the Assets as provided herein, but they

7  have participated in the formulation of the Sale Procedures and have allowed use of cash collateral

8  and provided post-petition financing in order to facilitate the process.  With regard to those assets

9  that are not encumbered by the Lender's liens (i.e., property located in Canada), to the extent that

10  the landlord for the Canadian premises or any other party asserts security interests in any of the

11  assets (which the Trustee disputes), they can be compelled to accept a money satisfaction equal to

12  the actual value of the collateral, i.e., the indubitable equivalent. See, In re Terrace Chalet

13  Apartments, Ltd., 159 B.R. 821, 829 (N.D. Ill. 1993) (holding that a creditor who could be

14  crammed down under section 1129(b) could be compelled to accept a money satisfaction of his

15  interest under section 363(f)(5)).

16    Under section 506(a) of the Bankruptcy Code, the amount of a secured claim is limited to

17  the value of the collateral securing such claim.  As a result, a fair price for the collateral itself

18  establishes the maximum amount of a creditor's secured claim.  Thus, since the proposed Sale

19  Procedures are intended to maximize the value of the Assets, the landlord, to the extent that it holds

20  a security interest in any of the Assets located in Canada, can be compelled to accept a money

21  satisfaction equal to its interest in said Assets.

22    **D.    The Requirement of Local Bankruptcy Rule 6004-1(c) Should Be Modified To**

23  **Allow For an Out of Court Auction.**

24    The recent amendments to the Local Bankruptcy Rules appear to require that rather than the

25  proposed auction, where overbids are anticipated, the trustee must, *unless excused*, hold a sale

26  hearing in court to sell these assets. The Trustee believes that this procedure would be impractical,

27  given the quantity of inventory to be sold, the likelihood of sales to numerous buyers of numerous

28  lots, the expense that would be incurred in holding separate inspections and then sales without the

- 13 -

1   inventory available for viewing at the time of sale and the increase in administrative expenses that

2   would occur, including the incurring of administrative rent due to the delay inherent in the process.

3   Accordingly, the Trustee requests that these provisions of Local Bankruptcy Rule 6004-1 calling

4   for the sale at a court hearing be modified as authorized by Local Bankruptcy Rule 1001-1(d).

5         Notwithstanding the requirement of Local Bankruptcy Rule 6004-1(c) and (d) to the effect

6   that sales subject to overbidding shall be set for hearing in court, the Trustee is requesting that the

7   Court set June 21, 2011 at 11:00 a.m. as the date for a sale by public auction of all property of the

8   Chapter 7 estates of each of the above-named Debtors to be conducted by the Sales Agent, which

9   the Trustee requests be held at the Intercontinental Hotel, 2151 Avenue of the Stars, Los Angeles,

10  California 90067 and at any other dates, times and places as may be announced at said auction or as

11  to which proper notice is given to those entitled thereto.

12        **E.    <u>Notice Should Be Deemed Adequate and Proper.</u>**

13        Service of a copy of the Notice of this Motion on all creditors via regular mail by June 3,

14  2011 and by e-mail, facsimile and/or overnight mail on secured creditors, landlords, prospective

15  purchasers, the twenty largest unsecured creditors and the United States Trustee is intended to

16  provide adequate notice to all creditors and interested parties of the Auction and the relief requested

17  herein.  In addition, the auctioneer and sales agent shall advertise the auction date and time in the

18  Wall Street Journal, National Edition, and such other publications and internet sites as the

19  auctioneer and sales agent deems necessary or appropriate.

20        The proposed terms of sale are set forth in the Bidding and Sale Procedures which is

21  Exhibit "A" to the Trustee's Declaration. No further hearing or order of Court shall be required to

22  conclude a sale to the high bidder(s) for a lot or lots or for the sale of the assets in bulk, but the

23  Trustee shall be free to seek such orders where he deems appropriate to do so.  Should no sufficient

24  offers be received, the Trustee reserves the right to file and serve a notice of intent to abandon those

25  assets. A Report of Sale required by FRBP 6004(f)(1) and Local Bankruptcy Rule 6007-1(g) will

26  be filed and served not later than 21 days after the date of each sale.

27  ///

28  ///

# IV.

## CONCLUSION

Wherefore, the Trustee respectfully requests an Order:

1.      approving the proposed Bidding and Sale Procedures generally described herein and set forth more fully in Exhibit "A" attached to the Trustee's Declaration;

2.      approving the terms of employment of the Sales Agent as set forth in Exhibit "B" to the Trustee's Declaration;

3.      pursuant to Local Bankruptcy Rule 1001-1(d), disposing with the requirements of Local Bankruptcy Rule 6004-1(c) and (d) to the effect that sales subject to overbidding shall be set for hearing in court, and instead, authorizing and setting June 21, 2011 at 11:00 a.m. as the date for a sale by public auction of the Assets to be conducted the Sales Agent, to take place at the Intercontinental Hotel, 2151 Avenue of the Stars, Los Angeles, California 90067 (the "Auction") or such other date(s), time(s) and place(s) as may be announced at said Auction or as to which advance notice is given to those entitled thereto;

4.      approving the sale of the Assets to the highest and best bidder(s) at the Auction, as is and where is, with no representations or warrantees, free and clear of all liens, claims, interests and encumbrances, pursuant to sections 105 and 363(b),(f),(h) and (m) of the Bankruptcy Code without further hearing;

5.      approving the form of the notice of the Auction, and the manner of service of same, which shall include the following:  (a) service of this Notice of Motion via regular mail by June 3, 2011 and on all creditors, secured creditors, prospective bidders and interested parties identified above and the United States Trustee via e-mail (if they consented to ECF service), facsimile and/or overnight mail; and (b) advertising the auction date and time in the Wall Street Journal, National and on-line editions and/or such other publications and internet sites as the Auctioneer/Sales Agent deems necessary or appropriate, including but not limited to the website of Danning, Gill, Diamond & Kollitz, LLP;

6.      authorizing the Trustee to abandon such Assets as are not sold at the Auction and to which the Trustee determines, in his business judgment, are burdensome and of inconsequential

370466.01 [XP]                                                                                                          1130496A

1 | value or benefit to the estates, by service notice of abandonment upon the secured creditors, parties

2 | requesting special notice, the United States Trustee, and the landlord for each location in which

3 | Assets are to be abandoned ; and

4 |          7.         granting such other relief as is fair and equitable.

5 |

6 | Dated:  June 2, 2011                              DANNING, GILL, DIAMOND & KOLLITZ, LLP

7 |

8 |                                                   By: _____

9 |                                                   STEVEN J. SCHWARTZ
                                                      Attorneys for David A. Gill, Chapter 7
10 |                                                  Trustee

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

- 16 -

# DECLARATION

1

## DECLARATION OF DAVID A. GILL

2    I, David A. Gill, declare and state as follows:

3    1.    I am the duly appointed, qualified and acting Interim Trustee in the bankruptcy

4    cases of International Architectural Group, LLC (2:11-bk-30486-RN)("IAG"), International

5    Architectural Products, Inc. (2:11-bk-30496-RN)("IAP"), International Management Services

6    Group, Inc. (2:11-bk-30504-RN)("ISMG") and United States Aluminum of Canada (2:11-bk-

7    30507-RN)("USAC") (collectively, the "Cases"). I am familiar with the contents of the Motion

8    with which this filed, and the matters contained herein. I could competently and would so testify if

9    sworn.

10    2.    The Cases were commenced on May 11, 2011 (the "filing date") when four

11    affiliated companies (the "Debtors") filed voluntary Chapter 7 petitions in the United States

12    Bankruptcy Court for the Central District of California. On the filing date I was appointed as the

13    Interim Trustee of the Cases. The Cases were filed on an emergency basis and as of this time no

14    bankruptcy schedules or statements of financial affairs have been filed. Since I had and still do not

15    have bankruptcy schedules or statements to rely upon, much of the information I am including

16    herein is based solely on what I have gathered from conversations with various individuals and

17    professionals involved in this case and the pleadings and documents my counsel and I have

18    reviewed. Accordingly, much of the background offered herein may not be entirely accurate and is

19    subject to revision and/or modification as additional facts and a better understanding is ascertained.

20    3.    The Debtors owned and operated an integrated building products manufacturing

21    business consisting of diversified lines of aluminum and vinyl building products. The operations

22    spanned the United States and operations and assets also located in Canada. Operations were

23    conducted by two of the Debtors, USAC, and IAP, the latter through a series of subsidiary

24    companies/divisions which were divided into three primary business groups: Residential Products,

25    Commercial Products and Aluminum Extrusion operations. The operations of both Debtors

26

27

28

17

1    apparently crossed corporate lines.[1]  The principal secured creditors were a group represented by

2    Canadian Imperial Bank of Commerce, New York Agency ("CIBC") as agent.  They are herein

3    described jointly and severally as "Lenders."

4          4.      A simple organization chart, of this not at all simple organization is attached hereto,

5    marked as Exhibit "C" and incorporated herein by this reference.  A brief description of the various

6    divisions and entities follows.

7          5.      The Residential Products Group operated as International Window Corporation

8    ("IWC"), International Window-Northern California and International Window Corporation

9    Arizona Inc.  It manufactured and distributed vinyl and aluminum windows and doors for

10   residential and housing markets.  It operated in two locations in Southgate and Hayward California

11   along with third facility in Phoenix, Arizona, which was closed pre-petition.

12         6.      The Commercial Products Group included eight divisions, as follows:

13               a.      Two of the Commercial Products Group divisions, United States Aluminum

14   of Canada Limited- Langley and United States Aluminum of Canada Limited- Guelph were

15   divisions of USAC, the Canadian entity.  USAC is reported to have free and clear cash, which I am

16   trying to access.  These divisions, manufactured and distributed architectural aluminum to the

17   commercial construction industry.

18               b.      The "United States Aluminum" American Divisions (the "USA Divisions")

19   consisted of United States Aluminum Corporation, United States Aluminum Corporation-Illinois,

20   United States Aluminum Corporation-Texas, United States Aluminum Corporation-Central

21   Warehouse, and United States Aluminum Corporation-Carolina.   The USAC and USA Divisions

22   operated at 12 locations total in 11 states and in Langley, Ontario, Canada.  Of those locations, five

23   were distribution sites, and seven were manufacturing sites.  USAC and IAP lease these premises,

24   and have one or more subleases.

25   _____

26   [1] The history of this case was set forth in detail in my Declaration filed on May 20, 2011 in support
     of Emergency Motions [Docket Entry #25].  It recounts a previous chapter 11 case, resulting in
27   reorganization of the Debtors.  The reorganization failed to save the Debtors.  On May 11, 2011,
     the above-captioned debtors filed chapter 7 cases in this court.

28

370466.01 [XP]                                                                                          1130496A

1        b.    RACO Interior Products, Inc. produced interior aluminum door frames and

2  window systems for commercial office applications. It operated in three Texas locations,

3  Waxahachie, Houston and Dallas. The property in Waxahachie is owned by IAP.

4        7.    The Extrusion Products Group consisted of one division, International Extrusion

5  Corporation-Texas ("IEC"), which produced extruded aluminum parts for the other business units

6  and outside third parties (revenue was 50% internal and 50% external). It is located on the IAP-

7  owned facility in Waxahachie, Texas at 202 Singleton Drive.

8        8.    A schedule of my best estimate of assets of the estates is attached hereto as Exhibit

9  "D." Title Reports containing general and legal descriptions of two of the three parcels of owned

10  real property to be offered in the Auction, the so called "Waxahachie Texas Real Property" and the

11  Alhambra Property, are attached hereto, marked as Exhibits "E" and "F," respectively, and

12  incorporated herein by this reference. The third property is farmland adjacent to the Waxahachie

13  Texas Real Property described as "N/E/C of South Interstate 35E & Solon Road Waxahachie, Ellis

14  County, Texas 75165 ORG File No. A07-144 (the "Waxahachie Farmland"). The Waxahachie

15  Farmland is comprised of a 1,366,782+- square foot (31.377+- acre) irregular shaped site situated

16  at the northeast corner of the intersection of the Interstate 35E service road and Solon Road, to the

17  west of the United States Aluminum industrial facility. The real property in Alhambra, California,

18  consists of a fee simple interest in IAP's 7.85 acre site located at 875 S. Fremont Avenue and 1000-

19  1100 S. Meridian Avenue, Alhambra, California 91803. This was a former extrusion plant. Its

20  contents were previously sold. It consists of building of 185,000 square feet in a redevelopment

21  area. I am advised that there are no mortgages on this property. There is an offer to purchase this

22  property for $7,300,000 cash, which I am advised will require environmental and legal work. This

23  property is reported to be encumbered by the liens of the Lenders.

24        9.    It is believed, including by me, that it is possible that a very prompt and widely

25  advertised sale may generate sales of portions of the businesses of the Debtors as going concerns,

26  rather than liquidations. If this is successful, this would obviously be beneficial to creditors.

27       10.    With this Court's approval, the Lenders have agreed to permit me to use cash

28  collateral to facilitate an immediate liquidation of assets, hopefully on a going concern basis where

370466.01 [XP]                                  1130496A

1    possible. The court contemplated a sale to commence on or about June 21, 2011. The Court has

2    authorized me (subject to approval of employment terms) to employ Hilco Industrial , LLC, Hilco

3    Real Estate, LLC and Counsel RB Capital LLC (collectively the "Sales Agent") to conduct an

4    auction and thereafter to assist in the sale of all saleable assets and collections of accounts

5    receivable.

6            11.        The Court's approval of said employment required separate presentation of a

7    proposed contract for such employment, a true copy of which is attached hereto as Exhibit "B."  It

8    also required that I submit for court approval, a detailed marketing and advertising plan, and I have

9    attached the same hereto as Exhibit "A."

10            I declare under penalty of perjury under the laws of the United States of America that the

11   foregoing is true and correct.

12            Executed on June _02_ 2011, at Los Angeles, California.

13

14                                                              _____

15                                                              DAVID A. GILL

16

17

18

19

20

21

22

23

24

25

26

27

28

370466.01 [XP]                                                                                              1130496A

# DECLARATION

1

## DECLARATION OF ADAM M. REICH

2        I, Adam M. Reich, declare as follows:

3        1.        I am the Co-CEO of Counsel RB Capital, LLC, an asset recovery firm specializing

4   in the auction and liquidation of industrial equipment, wholesale and retail inventories, accounts

5   receivable and intellectual property assets.  The principals of Counsel RB Capital, including myself

6   and Jonathan Reich are the former principals of Go Industry, the largest industrial auctioneer in the

7   world today.  After selling my interest in Go Industry in 2006, I formed Greystone Private Equity

8   which specializes in the identical liquidation business.  In February 2009, the principals of

9   Greystone Private Equity also formed Counsel RB Capital ("CRB") to take advantage of principal

10  distressed asset disposition opportunities. I make this Declaration in support of the Motion of

11  Chapter 7 Trustee to Employ Hilco Industrial, LLC and Counsel RB Capital, LLC, as auctioneer

12  for the Chapter 7 Trustee in these bankruptcy cases (the "Motion") pursuant to § 327 of the

13  Bankruptcy Code, 11 U.S.C. §§ 101 and 1330 (the "Bankruptcy Code").

14       2.        Neither I, Counsel RB Capital, LLC ("CRB") nor any principal or professional

15  thereof, insofar as I have been able to ascertain, has any connection with the Trustee, the Debtors,

16  their creditors, or any other parties-in-interest in these bankruptcy cases, or the respective attorneys

17  or other professionals or any employee of the Bankruptcy Administrator Office except as set forth

18  herein.  Specifically, and as a matter of routine course in bankruptcy proceedings, we have

19  manually analyzed the creditor lists attached to the Debtor's Schedule of Assets and Liabilities and

20  have determined that no conflicts exists.

21       3.        CRB does not hold nor represent any entity having an adverse interest in connection

22  with these bankruptcy cases.

23       4.        CRB is qualified to represent the Trustee in this case due to the considerable

24  experience that its principals has in (i) selling by public auction sale the assets of Chapter 7 estates;

25  (ii) selling by public auction sale the assets of residential and building supply companies, including

26  metal and vinyl window and door finished and  parts inventories; and (iii) selling by public auction

27  sale machinery and equipment utilized in the window and door manufacturing  industry in the

28  United States and overseas.  A listing of CRB's experience in this industry is attached hereto.  This

21

1  industry experience is crucial to the Trustee in maximizing the recovery to the estate because a

2  significant majority of the interested buyers are located overseas and will not be known to the

3  Trustee.

4       5.     CRB and Hilco Industrial, LLC (together, the "Auctioneer") have formed a co-

5  venture to conduct the auction sale for the Trustee.  The Auctioneer formed this co-venture because

6  each group enjoys considerable industry experience and has formed extensive long term domestic

7  and international relationships in the building industry.  Given the downturn in the domestic

8  commercial construction and home building industry, the Auctioneer determined that pooling its

9  respective contacts and industry experience would yield maximum recovery to the estate.

10       6.     The Auctioneer and the Trustee have prepared an agreement concerning the auction

11  procedures, compensation and reimbursement of certain expenses (the "Bidding and Sales

12  Procedures").  The Trustee will be attaching a copy of that document to his Motion.  I respectfully

13  incorporate its contents herein.

14       7.     CRB is a "disinterested person" as that term is defined in § 101(14) of the

15  Bankruptcy Code in that CRB and its principals and associates:

16            a.     are not creditors, equity security holders, or insiders of the Debtors;

17            b.     are not and were not investment bankers for any outstanding security of the

18  Debtors;

19            c.     have not been, within three (3) years before the date of the filing of the

20  Debtors' Chapter 7 petitions, investment bankers for a security of the Debtors, or an attorney for

21  such an investment banker in connection with the offer, sale, or issuance of a security of the

22  Debtors;

23            d.     are not and were not within two (2) years before the date of the filing of the

24  Debtors' Chapter 7 petitions, a director, officer, or employee of the Debtors or of any investment

25  banker as specified in subparagraph (b) or (c) of this paragraph; and

26            e.     do not have an interest materially adverse to the interest of the estate or of

27  any class of creditors or equity security holders, by reason of any direct or indirect relationship to,

28

                                

1 connection with, or interest in, the Debtors or an investment banker specified in subparagraph (b)

2 or (c) of this paragraph, or for any other reason.

3     8.     CRB is not representing any other person or entity with respect to this case other

4 than the Trustee. CRB has in the past represented, and currently represent, certain persons or

5 entities that are or may be creditors of the Debtors or their estates, but CRB has not represented,

6 and will not represent, these creditors in connection with this bankruptcy case.

7     9.     Further, CRB likely has or is representing a number of other unsecured creditors of

8 the Debtors and their chapter 7 estates, or affiliates thereof, however, any such representation does

9 not and, with respect to future matters, will not relate to the Debtors or the Debtors' bankruptcy

10 cases.

11     10.     No promises have been received by CRB or by any shareholder or professional

12 thereof as to compensation in connection with this case other than in accordance with the

13 provisions of the Bankruptcy Code. The Trustee has been advised CRB is co-venturing this

14 auction sale with Hilco Industrial, LLC. I have inquired and confirmed that neither of the joint

15 ventures partners hold or represent any entity having an adverse interest in connection with the

16 Debtor's bankruptcy case.

17     11.     There are no outstanding bills due and owing to CRB for professional services

18 performed for the Debtors or the Trustee or for reimbursement of charges and disbursements.

19     12.     As of the Petition Date, CRB was not a creditor of the Debtors or the chapter 7

20 estates.

21     13.     After the sale of the Property is consummated, CRB/Hilco shall submit a report of

22 the auction to Applicant. I acknowledge that the Auctioneer/Sales Agent shall not be paid any sale

23 expenses until he submits the report of auction to Applicant, and will turn over all gross proceeds to

24 the Trustee.

25     14.     Auctioneers/Sales Agents have or will prior to hearing of the Motion to which this is

26 appended, posted a single performance auction bond in the amount of $2,000,000 in favor of the

27 United States, as represented by the United States Trustee for the Central District of California.

28

23

15.    Neither of the Auctioneers/Sales Agents nor their employees hold or represent any interest adverse to the Trustee, the Debtor, the creditors, and the estate; (b) have no connection with the Debtor, the creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or any bankruptcy judge in the United States Bankruptcy Court for the Central District of California, except that CRB/Hilco may have conducted auctions in other unrelated matters in which the Trustee and other trustees were involved; (c) are disinterested persons as that term is defined in 11 U.S.C. § 101(14) and used in 11 U.S.C. § 327(a); and (d) hold no pre-petition claims against the estate.

16.    If Auctioneers/Sales Agents cannot deliver the auction proceeds immediately to the Trustee and such proceeds are more than $50,000, CRB/Hilco will open a segregated escrow or impress account for the deposit of the auction proceeds.  I also acknowledge and agree that: (a) the account will require the co-signature of the Trustee for any withdrawals; (b) all auction proceeds are to be deposited in the account immediately upon receipt and such deposit shall be verified by the Trustee; and (c) as soon as the last check deposited in the account has cleared, or the last deposit is made, whichever is applicable, all funds are to be transferred immediately to the Trustee, but in no event later than 45 days after the date of the auction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 2, 2011, at Los Angeles, California.



Adam M. Reich

24

# DECLARATION

## DECLARATION OF JOSEPH A. MALFITANO

I, Joseph A. Malfitano, declare as follows:

1.     I am the Vice President and Deputy General Counsel of Hilco Trading, LLC, the parent company of Hilco Industrial, LLC, an asset recovery firm specializing in the auction and liquidation of industrial equipment. Hilco Industrial is part of Hilco Trading, LLC, one of the largest asset recovery firms in the world today. I make this Declaration in support of the "Motion of Interim Trustee to Employ Hilco Industrial, LLC and Counsel RB Capital, LLC As Auctioneer, For Approval Of Auction Procedures And Sales, And For Related Relief".

2.     Neither I, Hilco Industrial, LLC ("HILCO") nor any principal or professional thereof, insofar as I have been able to ascertain, has any connection with the Trustee, the Debtors, their creditors, or any other parties-in-interest in these bankruptcy cases, or the respective attorneys or other professionals or any employee of the Bankruptcy Administrator Office except as set forth herein. Specifically, and as a matter of routine course in bankruptcy proceedings, we have manually analyzed the creditor lists attached to the Debtor's Schedule of Assets and Liabilities and have determined that no conflicts exist other than as set forth herein.

3.     HILCO does not hold nor represent any entity having an adverse interest in connection with these bankruptcy cases.

4.     HILCO is qualified to represent the Trustee in this case due to the considerable experience that its principals has in (i) selling by public auction sale the assets of Chapter 7 estates; (ii) selling by public auction sale the assets of commercial and residential building supply companies, including aluminum and vinyl window and door finished and parts inventories; and (iii) selling by public auction sale machinery and equipment utilized in the commercial and residential building  supply industries in the United States and overseas. A listing of HILCO's experience in this industry is attached hereto. This industry experience is crucial to the Trustee in maximizing the recovery to the estate because a significant majority of the interested buyers are located overseas and will not be known to the Trustee.

5.     HILCO and Counsel RB Capital, LLC (together, the "Auctioneer") have formed a co-venture to conduct the auction sale for the Trustee. The Auctioneer formed this co-venture

1130496A

1   because each group enjoys considerable industry experience and has formed extensive long term

2   domestic and international relationships in the building supply industry. Given the downturn in the

3   domestic commercial and residential construction industries, the Auctioneer determined that

4   pooling its respective contacts and industry experience would yield maximum recovery to the

5   estate.

6          6.      The Auctioneer and the Trustee have prepared an agreement concerning the auction

7   procedures, compensation and reimbursement of certain expenses (the "Bidding and Sales

8   Procedures"). The Trustee will be attaching a copy of that document to his Motion. I respectfully

9   incorporate its contents herein.

10         7.      HILCO is a "disinterested person" as that term is defined in § 101(14) of the

11  Bankruptcy Code in that HILCO and its principals and associates:

12                 a.      are not creditors, equity security holders, or insiders of the Debtors;

13                 b.      are not and were not investment bankers for any outstanding security of the

14  Debtors;

15                 c.      have not been, within three (3) years before the date of the filing of the

16  Debtors' Chapter 7 petitions, investment bankers for a security of the Debtors, or an attorney for

17  such an investment banker in connection with the offer, sale, or issuance of a security of the

18  Debtors;

19                 d.      are not and were not within two (2) years before the date of the filing of the

20  Debtors' Chapter 7 petitions, a director, officer, or employee of the Debtor or of any investment

21  banker as specified in subparagraph (b) or (c) of this paragraph; and

22                 e.      do not have an interest materially adverse to the interest of the estate or of

23  any class of creditors or equity security holders, by reason of any direct or indirect relationship to,

24  connection with, or interest in, the Debtors or an investment banker specified in subparagraph (b)

25  or (c) of this paragraph, or for any other reason.

26         8.      HILCO is not representing any other person or entity with respect to this case other

27  than the Trustee. HILCO has in the past represented, and currently represent, certain persons or

28

26

370466.01 [XP]                                                                      1130496A

1 entities that are or may be creditors of the Debtors or their estates, but HILCO has not represented,

2 and will not represent, these creditors in connection with their bankruptcy cases.

3     9.     Further, HILCO likely has or is representing a number of other unsecured creditors

4 of the Debtor and this chapter 7 estate, or affiliates thereof, however, any such representation does

5 not and, with respect to future matters, will not relate to the Debtors or the Debtors' bankruptcy

6 cases.

7     10.     In matters unrelated to the Debtors, affiliates of Hilco have previously performed

8 appraisal services for (or related to) the following entities: (i) Bank of America, (ii) Bayside Capital

9 Partners, (iii) Capital One N.A., (iv) Citibank, (v) Commerce Bank, (vi) Fifth Third Bank, (vii)

10 HSBC Bank USA, N.A., (viii) JPMorgan Chase, (ix) Morgan Stanley & Co., (x) PNC Bank, (xi)

11 RBS Citizens N.A., (xii) Regiment Capital, Ltd., (xiii) TD Bank, (xiv) Wachovia Bank and (xv)

12 Wells Fargo Bank, N.A.  Hilco does not believe that these connections create a conflict of interest

13 regarding the Debtors or these cases.

14     11.     In matters unrelated to the Debtors, affiliates of Hilco have policies in place with the

15 following insurers: ACE American Life, Chartis Excess Limited, Continental Insurance (CNA),

16 Liberty Mutual, and National Union Fire Insurance Company of Pittsburgh, PA.

17     12.     No promises have been received by HILCO or by any shareholder or professional

18 thereof as to compensation in connection with this case other than in accordance with the

19 provisions of the Bankruptcy Code.  The Trustee has been advised HILCO is co-venturing this

20 auction sale with Hilco Industrial, LLC and Counsel RB Capital, LLC.  I have inquired and

21 confirmed that neither of the joint ventures partners hold or represent any entity having an adverse

22 interest in connection with the Debtors' bankruptcy cases.

23     13.     There are no outstanding bills due and owing to HILCO for professional services

24 performed for the Debtors or the Trustee or for reimbursement of charges and disbursements.

25     14.     As of the Petition Date, HILCO was not a creditor of the Debtors or the chapter 7

26 estates.

27     15.     After the sale of the Property is consummated, HILCO shall submit a report of the

28 auction to Applicant.  I acknowledge that the Auctioneer/Sales Agent shall not be paid any sale

1 | expenses until he submits the report of auction to Applicant, and will turn over all gross proceeds to

2 | the Trustee.

3 |      16.    Auctioneers/Sales Agents have or will prior to hearing of the Motion to which this is

4 | appended, posted a single performance auction bond in the amount of $2,000,000 in favor of the

5 | United States, as represented by the United States Trustee for the Central District of California.

6 |      17.    Neither of the Auctioneers/Sales Agents nor their employees hold or represent any

7 | interest adverse to the Trustee, the Debtor, the creditors, and the estate; (b) have no connection with

8 | the Debtor, the creditors, any other party in interest, their respective attorneys and accountants, the

9 | United States Trustee, any person employed in the office of the United States Trustee, or any

10 | bankruptcy judge in the United States Bankruptcy Court for the Central District of California,

11 | except that HILCO may have conducted auctions in other unrelated matters in which the Trustee

12 | and other trustees were involved; (c) are disinterested persons as that term is defined in 11 U.S.C. §

13 | 101(14) and used in 11 U.S.C. § 327(a); and (d) hold no pre-petition claims against the estate.

14 |      18.    If Auctioneers/Sales Agents cannot deliver the auction proceeds immediately to the

15 | Trustee and such proceeds are more than $50,000, HILCO will open a segregated escrow or

16 | impress account for the deposit of the auction proceeds. I also acknowledge and agree that: (a) the

17 | account will require the co-signature of the Trustee for any withdrawals; (b) all auction proceeds

18 | are to be deposited in the account immediately upon receipt and such deposit shall be verified by

19 | the Trustee; and (c) as soon as the last check deposited in the account has cleared, or the last

20 | deposit is made, whichever is applicable, all funds are to be transferred immediately to the Trustee,

21 | but in no event later than 45 days after the date of the auction.

22 |

23 |      I declare under penalty of perjury under the laws of the United States of America that the

24 | foregoing is true and correct. Executed on June 2, 2011, at Detroit, Michigan.

25 |

26 |

27 | 

28 |                      Joseph A. Malfitano

                            1130496A

**EXHIBIT A**

## International Architectural Group, LLC and related entities

### Bidding and Sale Procedures

Set forth below are the bidding and sale procedures (the "Bidding Procedures") to be used with respect to the public auction (the "Auction") and sale (the "Sale") of the assets of International Architectural Group, LLC and its related entities, International Architectural Products, Inc., International Management Services Group, Inc. and United States Aluminum of Canada (together, the "Debtor" or "IAP") to be conducted by Hilco Industrial, LLC and Counsel RB Capital, LLC, the auctioneer and sales agent (the "Sales Agent") appointed by David A. Gill, acting in his capacity as the duly appointed Chapter 7 Trustee for the Debtor's estate pending in the Central District of California, Bankruptcy Case No's: 2:11-bk-30486-RN, 2:11-bk-30496-RN, 2:11-bk-30504-RN and 2:11-bk-30507-RN. CIBC, as the transfer agent for the lender group (together, the "Bank") has a first priority lien and security interest in and to all of the assets to be sold. The Sale will constitute a "free and clear" Sale of the Assets in accordance with 11 U.S.C. section 363 of the Federal Bankruptcy Code provided that the Bank's liens and security interests shall attached to the proceeds of the Assets with the same force, validity and effect. The Sales Agent, in the exercise of its business judgment, and after consulting with and receiving the consent of both the Trustee and the Bank, shall determine which Qualified Bidder(s) (as hereinafter defined) is deemed to have made the highest or otherwise best offers to purchase the assets (the "Successful Bidders"). The Bidding Procedures and Due Diligence Package (defined below) contain facts and information which are being provided for informational purposes only. Neither the Sales Agent, the Trustee, the Bank nor any of their respective directors, officers, managers, employees, agents, advisors or attorneys is making any factual representations, warranties or guaranties with respect to the title, ownership, warranty or condition of the assets to be sold. This sale is made by the Trustee in his official capacity as Trustee and there shall be no personal liability to him, his law firm and their respective agents and employees. At any time before or at the Auction, the Sales Agent, with the consent of both the Trustee and the Bank, may impose such other bidding procedures and terms and conditions, including minimum bids for each lot listed below as it may determine are in the best interests of the Seller and other parties in interest, and may modify or amend these procedures.

### Assets to Be Sold

The Sales Agent is offering for sale certain tangible and intangible personal property (together the "Assets"), in the lots or groups of lots set forth below in order to achieve the highest or otherwise best collective value for the Assets. The description of the lots and minimum bids related thereto are as follows:

1. Lot 1: <u>Bulk Bid.</u>    All of the Assets of the estate of IAP, including, but not limited to, the four (4) primary business units - (i) United States Aluminum Corporation; (ii) International Window Corporation; (iii) International Extrusion Corporation; and (iv) Raco Interior Products Group. The Assets of this lot include (i) trade and brand names and any other intellectual property owned by the Debtor; (ii) finished inventory; (iii) spare parts, (iv) returns, (v) work in process; (vi) owned and leased real property; (vii) software, office furniture and computers; and (viii) machinery, equipment, jigs, dies, moulds, rolling stock, warehouse and support equipment. A detailed description of the Assets included in this lot available in the Due Diligence Package (as hereinafter defined).

1

2.  Lot 2:  <u>Business Units.</u>        Any or all of the following business units: (i) United States Aluminum Corporation; (ii) International Window Corporation; (iii) International Extrusion Corporation; and (iv) Raco Interior Products Group.  The Assets of each business unit includes (i) trade and brand names and any other intellectual property owned by the Debtor (ii) finished inventory; (iii) spare parts, (iv) returns, (v) work in process; (vi) owned and leased real property; (vii) software, office furniture and computers; and (viii) machinery, equipment, jigs, dies, moulds, rolling stock, warehouse and support equipment.  A detailed description of the assets included in this lot is available in the Due Diligence Package.

Bids for individual sub-lots below will be permitted only if the Sales Agent determines, with consent of both the Trustee and the Bank, that the total of the qualified high bids for the aggregate of the sub-lots exceeds the qualified high bid for Lot 1 or 2, if any.  Although the Sales Agent currently intends to offer for sale the Assets in the lots described above or below (subject to the condition set forth in the immediately preceding sentence), the Sales Agent reserves the right, upon receipt of the Trustee's and the Bank's consent, to offer the Assets for sale in other lots not described herein, and to offer packages of lots in such combinations as the Sales Agent determines, in the exercise of its business judgment, and upon receipt of both the Trustee's and the Bank's consent, that will result in the highest or otherwise best collective value for the Assets.

3.  Lot 3:  <u>Individual Manufacturing Facilities.</u>        Any or all of the following manufacturing facilities (each, a "Facility"):  (i) Waxahachie, TX – includes real estate, machinery and equipment and inventory; (ii) Vernon, CA – includes machinery and equipment and inventory. Real estate is available for lease; (iii) South Gate, CA - includes machinery and equipment and inventory. Real estate is available for lease; (iv) Hayward, CA - includes machinery and equipment and inventory. Real estate is available for lease; (v) Chicago, IL - includes machinery and equipment and inventory. Real estate is available for lease; (vi) Langley, British Columbia - includes machinery and equipment and inventory. Real estate is available for lease; and (vii) Rock Hill, SC - - includes machinery and equipment and inventory. Real estate is available for lease.  A detailed description of the assets included in this lot is available in the Due Diligence Package.

4.  Lot 4:  <u>Inventory.</u>   All of the inventory assets, including finished inventory, work in process, spare parts, returns and raw materials where ever located.   A detailed description of the finished inventory assets included in this lot is available in the Due Diligence Package.

5.  Lot 5:  <u>Machinery & Equipment.</u>   All of the machinery, equipment, rolling stock, warehouse and support equipment, office equipment and furnishings located at the manufacturing facilities and corporate headquarters. A description of the assets included in this lot is available in the Due Diligence Package.

6.  Lot 6:  <u>Office Furniture & Computer Equipment located at Corporate Headquarters.</u> All of the office furniture, computer equipment, software and related personal property assets located at Debtor's headquarters in Monterey Park, California. A description of the assets included in this lot is available in the Due Diligence Package.

7.  Lot 7.  <u>Real Property.</u>  (i) Real property located in Waxahachie, TX and commonly known as Debtor's campus; and (ii) certain farmland acreage adjacent to the Waxahachie, TX campus. A description of the assets included in this lot is available in the Due Diligence Package.

EXHIBIT A   0030

8. Lot 8.  Combinations.  Any combinations of the lots described above as may be designated by a Qualified Bidder; provided that combination offers will be permitted subject to the Sales Agents consent and upon the receipt of consent from both the Trustee and the Bank.  The Minimum Bid for any combination of lots must equal at least the total of the "Minimum Bids" for each individual lot contained in such combination bid.

## Excluded Assets

Anything herein to the contrary notwithstanding, the Trustee shall retain and shall not sell, convey or transfer, assign or deliver any interest in the following assets of the Debtor (the "Excluded Assets"):

- Any of Debtor's cash and cash equivalents whatsoever, whether on hand, in banks or elsewhere.
- All accounts, accounts receivable, contract rights to payment, notes or notes receivable owing from affiliated companies.
- All causes of action or pending actions of Debtor against third parties.
- All deposits of Debtor, including, but not limited to, all deposit accounts and securities accounts and any funds, securities or other items maintained therein.
- All supplier rebates and credits, insurance refunds, policies or proceeds, tax refunds or other tax benefits.
- Any and all incorporation documents, corporate minutes, financial records, legal records, income tax returns and any other documentation necessary for the estate of Debtor.
- U.S. and Canadian tax net operating losses of Debtor.

## Reservation of Rights

The Sales Agent reserves the right, upon receipt of both the Trustee's and the Bank's consent, to enter into agreements for the Sales of Assets, individually or as part of a group, without further notice to any party until 24 hours before the commencement of the Auction, which agreements, if any, shall be subject to higher or otherwise better bids at the Auction.  The Sales Agent may offer in such agreements termination fees or other forms of bid protection as consented to by both the Trustee and the Bank and described below.

## Due Diligence Package & Inspection

To participate in the Bidding Process, each person must request a due diligence package (the "Due Diligence Package").  The Due Diligence Package contains, among other things, a description of the Assets included in the Sale.  All requests should be made to:    Brent Bonham @  616-451-6728 or Bbonham@hilcoind.com.  Inspections of the Assets can also be scheduled by contacting Brent Bonham. Bidders are advised to exercise their own discretion with respect to the inspection of the Assets and any bid(s) tendered.

3

EXHIBIT A    0031

### Bidder Pre-Qualification and Bid Deadline

All potential bidders must pre-qualify in order to participate and bid at the Auction and be designated as a Qualified Bidder. After receipt of the Due Diligence Package, an interested person must pre-qualify to bid at the Auction by delivering to the Sales Agent (specifically, Brent Bonham) the following:

(i)     A good faith deposit equal to ten percent (10%) of the bidder's intended opening bid ("Good Faith Deposit"). The deposit must be in the form of a certified check, made out to the Trustee or via wire transfer. Wire instructions can be requested by contacting Brent Bonham.

(ii)    A form of financial disclosure acceptable to the Sales Agent and its advisors and the Trustee and the Bank demonstrating such potential bidder's ability to close a proposed transaction in cash. There will be no Seller or Bank financing for any of the Lots or sub-lots.

(iii)   Bids for Lot 1 must include an executed Memorandum of Sale in the form provided by the Sales Agent in the Due Diligence Package, which form shall be acceptable in form to the Trustee and the Bank. The Memorandum of Sale, or the documentation submitted by the bidder in connection therewith, must (a) clearly set forth the purchase price to be paid, (b) include a list of all executory contracts and unexpired leases that are to be assumed and assigned to the bidder as part of the purchase, (c) fully disclose (i) the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, (ii) the terms of any such participation, and (iii) if an entity has been formed for the purpose of acquiring some, or all, of the Assets, the parties that will bear liability for any breach by such entity, and the financial capacity of such parties to satisfy such liability, and (d) state that the bidder agrees and acknowledges that it is bound by, and that the Memorandum of Sale is subject to, these Bidding Procedures.

A bid may not contain any financing, diligence or "material adverse change" contingencies and the bid of any Successful Bidder (defined below) will be binding whether or not (i) the Successful Bidder (or Backup Bidder (as defined below), if applicable) has obtained financing or exhausted diligence or (ii) a "material adverse change" has occurred.

**All potential bidders must submit the foregoing items (including the Good Faith Deposit) to the Sales Agent, by no later than 4:00 p.m. (Prevailing Pacific Time) on June 15, 2011 (the "Bid Deadline").**

All documents, bids, financial information and any other pre-qualification information submitted by a potential bidder will be held by the Sales Agent in a confidential manner and the Sales Agent shall not release such documents, bids, or other information to any person or entity unless compelled to do so by final, unappealed order of a court of competent jurisdiction, provided that the Sales Agent shall distribute copies of such documents, bids, and other financial information on the same confidential basis to the Trustee and the Bank. The Sales Agent, with the consent of both the Trustee and the Bank, may extend the bid deadline once or successively, but is not obligated to do so.

4

EXHIBIT A    0032

## Bid Protection

The Sales Agent may (but is not required to) offer, with the consent of both the Trustee and the Bank, a termination or break-up fee, expense reimbursement or other incentives (the "Bid Protection") to induce a potential bidder to make a Qualified Bid prior to the Auction; provided, however, that in no event shall more than one Bid Protection be offered as to each lot of Assets; provided further that if a Bid Protection has been offered in connection with a bid on Lot 1, the Sales Agent may not offer or agree to any other Bid Protection on Lot 1 or any other lots. Such Bid Protections shall only be payable if (a) a higher or otherwise better offer is made at the Auction by another bidder which results in a Sale that closes and (b) the party to whom such Bid Protection was provided (i) was not in default of any of its obligations to the Sales Agent and the Trustee; and (ii) was otherwise ready, willing and able to close on its proposed transaction at its initial bid. No party will be entitled to a Bid Protection without (z) a written agreement signed by the Sales Agent and the Qualified Bidder which agreement explicitly sets forth the terms of such protection and (y) the prior consent of both the Trustee and the Bank.

## Credit Bidding / Reserve Prices

At any time prior to the conclusion of the Auction, the Bank may submit, pursuant to section 363(k) of the Federal Bankruptcy Code, a credit bid consisting of all or a portion of it claims against the Debtor towards the purchase of all or a portion of the Asset. To the extent it submits a credit bid, the Bank shall be considered a Qualified Bidder. Prior to the commencement of the Auction, the Bank also shall be permitted to designate reserve prices for all or any portion of the Assets. Unless otherwise provided in any cash collateral order approved by the Bankruptcy Court, the Bank may not assert any of the consent rights or consultation rights provided to it in these Bidding Procedures until such time that (i) the Bank notifies the Sales Agent and the Trustee that it will not submit a bid (including any credit bid) or, (ii) if the Bank already has submitted a bid (including any credit bid), the Bank notifies the Sale Agent and the Trustee that it will no longer participate in the Auction.

## "As Is Where Is"

The Assets are being sold, (i) **"AS IS, WHERE IS, AND WITH ALL FAULTS,"** and otherwise to include any disclaimers of warranty, including but not limited to disclaimers of the warranties of merchantability and fitness for a particular purpose or use, and (ii) **"THERE IS NO WARRANTY RELATING TO QUIET ENJOYMENT, OR THE LIKE IN THE DISPOSITION OF ANY OF THE ASSETS."** Bidders are hereby advised, and by submitting a bid each Bidder is deemed to acknowledge, that the Sales Agent, the Trustee, the Bank and each of their respective directors, officers, managers, employees, agents, advisors or attorneys have no knowledge with respect to, and have no obligation to investigate, the merchantability or fitness for any particular purpose or use of any of the Assets. **NO WARRANTY OR REPAIR PROGRAM FOR THE ASSETS IS BEING OFFERED AS PART OF THE SALE.**

EXHIBIT A    0033