1  RICHARD K. DIAMOND (State Bar No. 070634)
   rdiamond@dgdk.com
2  STEVEN J. SCHWARTZ (State Bar No. 200586)
   sschwartz@dgdk.com
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
4  Los Angeles, California 90067-2904
   Telephone: (310) 277-0077
5  Facsimile: (310) 277-5735

6  [Proposed] Attorneys for David A. Gill,
   Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>INTERNATIONAL ARCHITECTURAL GROUP, LLC,<br><br>Debtor.<br><br>☒ Affects all Debtors<br><br>☐ Affects the following Debtor(s): | Case No. 2:11-bk-30486-RN<br>Case No. 2:11-bk-30496-RN<br>Case No. 2:11-bk-30504-RN<br>Case No. 2:11-bk-30507-RN<br><br>Chapter 7<br><br>Jointly Administered Cases<br><br>**TRUSTEE'S NOTICE OF MOTION AND MOTION TO CONFIRM SALE OF CERTAIN PROPERTY OF THE ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS OR INTERESTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DAVID A GILL AND JAMES BAIONE IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:   June 29, 2011<br>Time:   2:30 p.m.<br>Ctrm:   1645<br>           255 E. Temple St.<br>           Los Angeles, CA 90012 |

- 1 -

371330.01 [XP]    1130496A

1  TO THE HONORABLE RICHARD M. NEITER, UNITED STATES BANKRUPTCY
2  JUDGE AND INTERESTED PARTIES:
3    PLEASE TAKE NOTICE that, on June 29, 2011 at 2:30 p.m., or such other date and time
4  as to be set by the Court, David A. Gill, Chapter 7 Trustee (the "Trustee") of the above jointly
5  administered chapter 7 estates of <u>International Architectural Group, LLC</u> (2:11-bk-30486-
6  RN)("IAG"), <u>International Architectural Products, Inc.</u> (2:11-bk-30496-RN)("IAP"), <u>International
7  Management Services Group, Inc.</u> (2:11-bk-30504-RN)("ISMG") and <u>United States Aluminum of
8  Canada</u> (2:11-bk-30507-RN)("USAC") (collectively, the "Debtors"), will and hereby does move
9  the court (the "Motion") pursuant to sections 105 and 363 of the United States Bankruptcy Code,
10 11 U.S.C. §§ 101-1530, as amended (the "Bankruptcy Code"), Rules 6004, and 9014 of the Federal
11 Rules of Bankruptcy Procedure (each a "Bankruptcy Rule," and collectively, the "Bankruptcy
12 Rules"), and Local Bankruptcy Rule 6004-1, for an order confirming the sale of certain property of
13 the estate to Universal Molding Company, Inc. ("Buyer"), free and clear of all liens, claims or
14 interests and for a finding that Buyer is a good faith purchaser pursuant to section 363(m) of the
15 Bankruptcy Code (the "Sale Motion").
16   PLEASE TAKE FURTHER NOTICE that on June 21, 2011, at 11:00 a.m., pursuant to
17 the terms of the Order (A) Approving Procedures for Sale of Estate Property; (B) Approving the
18 Terms of Employment of the Auctioneer/Sales Agent; (C) Scheduling an Auction for the Sale; (D)
19 Authorizing the Sale Free and Clear of Liens, Claims, Encumbrances and Interests Without Further
20 Hearing; and (E) Granting Related Relief [Docket No. 91] (the "Bid Procedures Order"), an auction
21 was held at the Hotel Intercontinental in Los Angeles, California in connection with the proposed
22 sale by the Trustee of certain property of the Debtors' bankruptcy estates (the "Assets").
23   PLEASE TAKE FURTHER NOTICE that Universal Molding Company, Inc. ("Buyer")
24 was confirmed by the Trustee as the successful bidder, having made the highest and best bid for
25 those certain assets (collectively, the "Purchased Assets") described and defined in that certain Bill
26 of Sale (collectively, the "Assets"), dated June 21, 2011, a true and correct copy of which is
27 attached to the Declaration of David A. Gill (the "Trustee's Declaration") marked as Exhibit "A,"
28 and incorporated herein by this reference.

371330.01 [XP]                                                                                              1130496A

1     **PLEASE TAKE FURTHER NOTICE** that on June 17, 2011 the Trustee filed his Emergency Motion To Amend the Bid Procedures Order [Docket No. 102] seeking to permit the filing of a motion to confirm a sale following the auction on shortened notice, which motion was granted by order entered on June 22, 2011 [Docket No. 109] (the "Order Shortening Time").

    **PLEASE TAKE FURTHER NOTICE** that pursuant Local Bankruptcy Rules 6004-1(b), 9013-1 and 9075-1 and the Order Shortening Time, any parties seeking to object to the relief sought must, <u>not later than 1 day before the hearing date</u>, file a response with the Clerk of the Bankruptcy Court, 255 E. Temple Street, Los Angeles, California and serve a copy of the same upon the Trustee's counsel at the address provided in the upper left hand corner of the first page of this Notice. Papers filed in opposition to the motion must be served by personal delivery, messenger, fax or email. A judge's copy of the opposition must be served on the judge in chambers in accordance with LBR 5005-2(d).

Dated: June 22, 2011

    DANNING, GILL, DIAMOND & KOLLITZ, LLP

    By: _/s/ Steven J. Schwartz_
    STEVEN J. SCHWARTZ
    Attorneys for David A. Gill, Chapter 7 Trustee

- 3 -

371330.01 [XP]    1130496A

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTS

1.  The bankruptcy cases of International Architectural Group, LLC (2:11-bk-30486-RN)("IAG"), International Architectural Products, Inc. (2:11-bk-30496-RN)("IAP"), International Management Services Group, Inc. (2:11-bk-30504-RN)("ISMG") and United States Aluminum of Canada (2:11-bk-30507-RN)("USAC") (collectively, the "Cases") were commenced on May 11, 2011 (the "Petition Date") when four affiliated companies (the "Debtors") filed voluntary Chapter 7 petitions in the United States Bankruptcy Court for the Central District of California. On the Petition Date, David A. Gill (the "Trustee") was appointed as the Interim Trustee of the Cases. The Cases were filed on an emergency basis and as of this time no bankruptcy schedules or statements of financial affairs have been filed.

2.  On or about June 2, 2011, the Trustee filed his Notice Of Motion And Trustee's Motion For The Entry Of An Order (A) Approving Procedures For Sale Of Estate Property; (B) Approving The Terms Of Employment Of The Auctioneer/Sales Agent; (C) Scheduling An Auction For The Sale; (D) Authorizing The Sale Free And Clear Of Liens, Claims, Encumbrances And Interests Without Further Hearing; And (E) Granting Related Relief (the "Sale Procedures Motion").

3.  On or before June 3, 2011, the Trustee served a Notice of the Sale Procedures Motion (the "Notice of Motion") via regular mail by June 3, 2011 on all creditors, and on secured creditors, prospective bidders and interested parties and the United States Trustee via e-mail (if they consented to ECF service), facsimile and/or overnight mail.

4.  With respect to future hearings or notice, the Notice of Motion stated as follows: "No further hearing or order of Court shall be required to conclude a sale to the high bidder for a lot or lots or for the sale of the assets in bulk; however the Trustee reserves the right to seek such an order if he deems it to be necessary. No additional notice will be sent to creditors of entry of an order approving the Motion or otherwise, other than those parties who request special notice pursuant to the procedures set forth in the Order Limiting Notice served concurrently herewith. A

- 4 -

Case 2:11-bk-30486-RN    Doc 114    Filed 06/22/11    Entered 06/22/11 19:04:46    Desc
            Main Document      Page 5 of 15

Report of Sale as required by FRBP 6004(f)(1) will be filed and served not later than 21 days after the date of the sale, or sales."

5. On June 7, 2011 at 2:00 p.m. the Court held a hearing on the Sale Procedures Motion, at which the Court granted the motion in its entirety. An Order approving the Sale Procedures Motion was entered on July 15, 2011.

6. On June 17, 2011, the Trustee filed his Emergency Motion to Amend the Bid Procedures Order [Docket No. 102] seeking to permit the filing of a motion to confirm the sale following the auction on shortened notice, which motion was granted by order entered on June 22, 2011 [Docket No. 109].

7. On June 21, 2011, an auction was held pursuant to the Sale Procedures approved by the Court. Prior to the auction, several prospective bidders tendered qualified bids in accordance with the Sale Procedures, including Universal Molding Company, Inc. ("Buyer"). The auction was conducted by the Trustee's Sales Agent, Hilco Industrial, LLC, Hilco Real Estate LLC and Counsel RB Capital LLC (collectively, the "Sales Agent"). There was competitive bidding at the auction. The Sales Agent offered for bidding the Assets in various "lots," in accordance with the proposed Sale Procedures. There were no identical bids submitted and no break-up fee or other bid protections were required. At the conclusion of the Auction, after consideration of all of the offers and various combinations thereof, it was determined that the bid of Buyer was the highest and best overall bid.

8. The terms of the proposed sale to Buyer are as set forth in the Bill of Sale attached to the Trustee's Declaration, marked as Exhibit "A" and incorporated herein by this reference. Without in any way altering or limiting its terms, the following is a general description of the Bill of Sale: For the purchase price of Eight Million Dollars ($8,000,000), the Trustee shall sell and Buyer shall purchase all of the Debtors' right, title and interest in, to and under substantially all of Debtors' assets, but excluding the Excluded Assets listed in Exhibit 2 to the Bill of Sale. Excluded Assets include cash, accounts receivable, tax refunds, causes of action, books and records, non-assignable permits and any and all leases, any and all leased real or personal property and any owned real property, except for the Debtors' owned real property located in Waxahachie, Texas.

371330.01 [XP]                                                                                                    1130496A

1   With respect to real property, the Purchased Assets include the Debtors' owned real property
2   located in Waxahachie, Texas (including the factory and the adjacent farmland) but does <u>not</u>
3   include the Debtors' owned real property in Alhambra, California.
4       9.   As set forth in the Declaration of James Baione, Buyer is a third-party, good faith
5   Buyer unrelated to any of the Debtors. Prior to the auction, Buyer submitted a qualified bid. Buyer
6   participated in the auction in an ordinary fashion and the Trustee is unaware of and believes that
7   there was no collusive bidding.
8       10.  Attached to the Trustee's Declaration, marked as Exhibit "B" is a proposed form of
9   Order approving the Sale Motion that incorporates some material terms of the Bill of Sale and was
10  prepared with the input of Buyer and the Lenders. The Trustee requests that the Court enter the
11  Order in substantially the same form as set forth therein.

## II.

## ARGUMENT

### A. The Proposed Sale to Buyer Is a Proper Exercise of the Trustee's Reasonable Business Judgment.

Section 363(b)(1) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b)(1). Courts interpret section 363 to require only that such sale or use of property be within the sound judgment of the trustee to which the court gives great deference. See, e.g., In re Moore, 110 B.R. 924 (Bankr. C.D. Cal. 1990); In re Canyon P'ship, 55 B.R. 520 (Bankr. S.D. Cal. 1985); see also Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 289 (9th Cir. BAP 2005) (trustee's position is afforded deference, "particularly where business judgment is entailed in the analysis"); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (9th Cir. BAP 1988) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business ... Whether the proffered business justification is sufficient depends on the facts of the case.")

As stated by the Bankruptcy Appellate Panel in In re Walter, the bankruptcy court should consider all salient factors pertaining to the proposed transaction and accordingly, act to further the

- 6 -

diverse interests of the debtor, creditors, and equity holders alike. Id. 83 B.R. at 20. Among other factors, courts should consider the consideration to be paid, the financial condition and needs of the debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to be sold would decline in value if left in the debtor's possession. See, Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.), 492 F.2d 793, 794 (9th Cir. 1974) (affirming trial court's finding that the proposed sale of the debtor's assets would be in the best interest of the estate in light of impending deterioration of market value of the debtor's assets).

Here, the Trustee determined in his business judgment that the sale to Buyer is in the best interest of the estate, after consideration of all of the bids submitted in the competitive bidding process approved by this Court. The Trustee believes that the sale of substantially all of the assets of the estate save for cash, accounts receivable, tax refunds, legal claims, leases and the Alhambra real property for $8 million, pursuant to the terms of the Bill of Sale, is the best possible means of generating value for the estate, as it allows the Trustee to reject all leases and to vacate the properties in short fashion (no later than 30 days following the Closing) thereby maximizing the value of those assets that require the most administrative expense, while reserving for the estate those assets which require less substantial and immediate expenditures and thus can be collected and/or sold over a longer period of time.

### B. **The Court Should Authorize the Sale to Buyer Free and Clear of Liens, Claims, Interests and Encumbrances.**

The Trustee requests that the Court approve the sale of the Assets free and clear of all interests, with any such interests to attach to the sale proceeds with the same validity and priority as existed prior to the sales, or to be paid in full.

Section 363(f) of the Bankruptcy Code expressly authorizes a trustee to sell property outside of the ordinary course of business "free and clear of any interest in such property of an entity" if any one of the five following conditions is met:

(a)   applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(b)   such entity consents;

    (c)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (d)    such interest is in bona fide dispute; or

    (e)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, any one of these five conditions provides authority to sell the Assets free and clear of liens. See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988).

Here, the Lenders not only consent to the sale of the Assets as provided herein, but they have participated in the formulation of the Sale Procedures and have allowed use of cash collateral and provided post-petition financing in order to facilitate the process. Lenders are the only known secured creditors of the Debtors, other than some equipment lessors who filed UCC-1 financing statements as to their leased equipment. A true and correct copy of the results of the UCC-1 search conducted on June 15, 2011 is attached to the Trustee's Declaration, marked as Exhibit "C" and incorporated herein by this reference. All parties located pursuant to said UCC-1 search have been served with a copy of this Sale Motion.

While a number of parties have filed objections to the Sale Procedures on the basis that they own certain property held by the Debtors, this issue is irrelevant to the 363(f), since the Trustee does not intend to and does not include among the Purchased Assets any property not owned by the Debtors, including but not limited to leased equipment. Accordingly, those parties shall retain their rights in equipment to which they own, although it remains their burden to prove actual ownership thereof.

### C. The Proposed Sale to Buyer is in Good Faith.

"[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1) of the Bankruptcy Code, it is required to make a finding with respect to the 'good faith' of the purchaser." In re Abbotts Dairies, 788 F.2d 143, 149-50 (3rd Cir. 1986). The purpose of such a finding is to facilitate the operation of section 363(m) of the Bankruptcy Code, which provides a safe harbor for

371330.01 [XP]      1130496A

1  a purchaser of a debtor's property when the purchase is made in "good faith." Specifically, section
2  363(m) provides:

3      The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of the sale or
4  lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal unless such
5  authorization and such sale or lease were stayed pending appeal.

6  11 U.S.C. § 363(m); see Well v. Diebert (In re Well), 958 F.2d 276, 280 (9th Cir. 1992).

7  This provision serves the important purposes both of encouraging good faith transaction and of

8  preserving the finality of the bankruptcy court's orders unless stayed pending appeal. Abbotts

9  Dairies, 788 F.2d at 147. As the Seventh Circuit recognized in In re Edwards, 962 F.2d 641 (7th

10  Cir. 1992), "[i]f purchasers at judicially approved sales of property of a bankruptcy estate, and their

11  lenders, cannot rely on the deed that they receive at the sale, it will be difficult to liquidate

12  bankruptcy estates at positive prices." Id. at 643. The court also noted that although the law

13  balances the competing interests between lien holders and purchasers of assets of the estate, it

14  weighs such interests "heavily in favor of the bona fide purchaser, particularly where, as here, there

15  are substantial business justifications for the proposed transaction." Id.

16      In this case, Buyer, as the highest and best bidder at the auction, is entitled to the safe

17  harbor provided by section 363(m) of the Bankruptcy Code. Indeed, the Trustee's Declaration and

18  the Declaration of James Baione demonstrate that the negotiations between Buyer and the Trustee

19  at all times have been conducted at arms' length and in good faith and in accordance with the Sale

20  Procedures. In connection with the proposed sale, the Trustee has evaluated the alternatives and

21  acted with the intent of obtaining the best possible deal for the estate in terms of maximizing value.

22  The terms of the proposed sale accomplish this appropriate objective. Moreover, Buyer is not an

23  insider of the Debtors. For these reasons, the Trustee requests that the court make a factual

24  determination that Buyer has purchased the Assets in good faith as defined in section 363(m) of the

25  Bankruptcy Code.

26  ///
27  ///
28  ///

## III.

## CONCLUSION

Wherefore, the Trustee respectfully requests that the Court enter an order substantially similar to the one attached to the Trustee's Declaration marked as Exhibit "B," confirming the sale of certain property of the estate to Universal Molding Company, Inc. ("Buyer"), free and clear of all liens, claims or interests and for a finding that Buyer is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code. The Trustee requests such other appropriate relief.

Dated: June 22, 2011

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _____
STEVEN J. SCHWARTZ
Attorneys for David A. Gill, Chapter 7 Trustee

## DECLARATION OF DAVID A. GILL

I, David A. Gill, declare and state as follows:

1. I am the duly appointed, qualified and acting Interim Trustee in the bankruptcy cases of <u>International Architectural Group, LLC</u> (2:11-bk-30486-RN)("IAG"), <u>International Architectural Products, Inc.</u> (2:11-bk-30496-RN)("IAP"), <u>International Management Services Group, Inc.</u> (2:11-bk-30504-RN)("ISMG") and <u>United States Aluminum of Canada</u> (2:11-bk-30507-RN)("USAC") (collectively, the "Cases"). I am familiar with the contents of the Motion with which this filed, and the matters contained herein. I could competently and would so testify if sworn.

2. The Cases were commenced on May 11, 2011 (the "filing date") when four affiliated companies (the "Debtors") filed voluntary Chapter 7 petitions in the United States Bankruptcy Court for the Central District of California. On the filing date I was appointed as the Interim Trustee of the Cases. The Cases were filed on an emergency basis and as of this time no bankruptcy schedules or statements of financial affairs have been filed.

3. On or about June 2, 2011, I caused to be filed my Notice Of Motion And Trustee's Motion For The Entry Of An Order (A) Approving Procedures For Sale Of Estate Property; (B) Approving The Terms Of Employment Of The Auctioneer/Sales Agent; (C) Scheduling An Auction For The Sale; (D) Authorizing The Sale Free And Clear Of Liens, Claims, Encumbrances And Interests Without Further Hearing; And (E) Granting Related Relief (the "Sale Procedures Motion").

4. On or before June 3, 2011, I caused to be served a Notice of the Sale Procedures Motion (the "Notice of Motion") via regular mail by June 3, 2011 on all creditors, and on secured creditors, prospective bidders and interested parties and the United States Trustee via e-mail (if they consented to ECF service), facsimile and/or overnight mail.

5. With respect to future hearings or notice, the Notice of Motion stated as follows: "No further hearing or order of Court shall be required to conclude a sale to the high bidder for a lot or lots or for the sale of the assets in bulk; however the Trustee reserves the right to seek such an order if he deems it to be necessary. No additional notice will be sent to creditors of entry of an

11

order approving the Motion or otherwise, other than those parties who request special notice pursuant to the procedures set forth in the Order Limiting Notice served concurrently herewith. A Report of Sale as required by FRBP 6004(f)(1) will be filed and served not later than 21 days after the date of the sale, or sales."

6. On June 7, 2011 at 2:00 p.m. the Court held a hearing on the Sale Procedures Motion, at which the Court granted the motion in its entirety. An Order approving the Sale Procedures Motion was entered on July 15, 2011.

7. On June 17, 2011, I caused to be filed my Emergency Motion to Amend the Bid Procedures Order [Docket No. 102] seeking to permit the filing of a motion to confirm the sale following the auction on shortened notice, which motion was granted by order entered on June 22, 2011 [Docket No. 109].

8. On June 21, 2011, an auction was held pursuant to the Sale Procedures approved by the Court. Prior to the auction, several prospective bidders tendered qualified bids in accordance with the Sale Procedures, including Universal Molding Company, Inc. ("Buyer"). The auction was conducted by my Sales Agent, Hilco Industrial, LLC, Hilco Real Estate LLC and Counsel RB Capital LLC (collectively, the "Sales Agent"). There was competitive bidding at the auction. The Sales Agent offered for bidding the Assets in various "lots," in accordance with the proposed Sale Procedures. There were no identical bids submitted and no break-up fee or other bid protections were required. At the conclusion of the Auction, after consideration of all of the offers and various combinations thereof, it was determined that the bid of Buyer was the highest and best overall bid.

9. The terms of the proposed sale to Buyer are as set forth in the Bill of Sale attached hereto, marked as Exhibit "A" and incorporated herein by this reference. Without in any way altering or limiting its terms, the following is a general description of the Bill of Sale: For the purchase price of Eight Million Dollars ($8,000,000), I shall sell and Buyer shall purchase all of the Debtors' right, title and interest in, to and under substantially all of Debtors' assets, but excluding the Excluded Assets listed in Exhibit 2 to the Bill of Sale. Excluded Assets include cash, accounts receivable, tax refunds, causes of action, books and records, non-assignable permits and any and all leases, any and all leased real or personal property and any owned real property, except for the

371330.01 [XP]    1130496A

Debtors' owned real property located in Waxahachie, Texas. With respect to real property, the Purchased Assets include the Debtors' owned real property located in Waxahachie, Texas (including the factory and the adjacent farmland) but does not include the Debtors' owned real property in Alhambra, California.

10. As further set forth in the Declaration of James Baione, Buyer is a third-party, good faith Buyer unrelated to any of the Debtors. Prior to the auction, Buyer submitted a qualified bid. Buyer participated in the auction in an ordinary fashion and there was no collusive bidding to which I am aware. I was present at the auction at all times and I did not notice or observe any collusive discussions among any of the bidders.

11. Attached hereto, marked as Exhibit "B" is a proposed form of Order approving the Sale Motion that incorporates some material terms of the Bill of Sale and was prepared with the input of Buyer and the Lenders. I request that the Court enter the Order in substantially the same form as set forth therein.

12. I have determined in my business judgment that the sale to Buyer is in the best interest of the estate, after consideration of all of the bids submitted in the competitive bidding process approved by this Court. I believe that the sale of substantially all of the assets of the estate save for cash, accounts receivable, tax refunds, legal claims, leases and the Alhambra real property for $8 million, pursuant to the terms of the Bill of Sale, is the best possible means of generating value for the estate, as it allows me to reject all leases and to vacate the properties in short fashion (no later than 30 days following the Closing) thereby maximizing the value of those assets that require the most administrative expense, while reserving for the estate those assets which require less substantial and immediate expenditures and thus can be collected and/or sold over a longer period of time.

13. The Lenders not only consent to the sale of the Assets as provided herein, but they have participated in the formulation of the Sale Procedures and have allowed use of cash collateral and provided post-petition financing in order to facilitate the process. The Lenders are the only known secured creditors of the Debtors, other than some equipment lessors who filed UCC-1 financing statements as to their leased equipment. A true and correct copy of the results of the

1  UCC-1 search conducted on June 15, 2011 by my office at my request is attached hereto, marked as Exhibit "C" and incorporated herein by this reference. All parties located pursuant to said UCC search have been served with a copy of this Sale Motion.

14. While a number of parties have filed objections to the Sale Procedures on the basis that they own certain property held by the Debtors, this issue is irrelevant to the 363(f), since I do not intend to and does not include among the Purchased Assets any property not owned by the Debtors, including but not limited to leased equipment. Accordingly, those parties shall retain their rights in equipment to which they own, although it remains their burden to prove actual ownership thereof.

15. Buyer, as the highest and best bidder at the auction, is entitled to the safe harbor provided by section 363(m) of the Bankruptcy Code. Indeed, negotiations between Buyer and me at all times have been conducted at arms' length and in good faith and in accordance with the Sale Procedures. In connection with the proposed sale, I have evaluated the alternatives and acted with the intent of obtaining the best possible deal for the estate in terms of maximizing value. The terms of the proposed sale accomplish this appropriate objective. Moreover, as the Buyer's declaration demonstrates, Buyer is not an insider of the Debtors. For these reasons, I request that the court make a factual determination that Buyer has purchased the Assets in good faith as defined in section 363(m) of the Bankruptcy Code.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 22, 2011, at Los Angeles, California.

_____
DAVID A. GILL

# **DECLARATION OF JAMES BAIONE**

**I, James Baione, declare and state as follows:**

1. I am an individual over the age of 18 years. I have personal knowledge of the facts in this declaration and, if called as a witness, could testify competently to these facts. I am the President of Universal Molding Company, Inc. ("Buyer").

2. This declaration is made in support of the motion of David A. Gill, the Chapter 7 trustee (the "Trustee") for the estates of International Architectural Group, LLC (2:11-bk-30486-RN)("IAG"), International Architectural Products, Inc. (2:11-bk-30496-RN)("IAP"), International Management Services Group, Inc. (2:11-bk-30504-RN)("ISMG") and United States Aluminum of Canada (2:11-bk-30507-RN)("USAC") (collectively, the "Debtors"), to confirm his proposed sale to Buyer of certain personal property of the Debtors as identified in the Bill of Sale attached to the Trustee's Declaration (the "Assets"), for $8,000,000 (the "Purchase Price").

3. The Purchase Price was negotiated in good faith and in arms' length discussions with the Trustee and was subject to overbid at the auction conducted on June 21, 2011 at 11:00 a.m. (the "Auction").

4. Neither Buyer nor any entity with which Buyer is affiliated, nor any person acting on Buyer's behalf, has any relationship with or to the Debtors, any person related to the Debtors, or to the Trustee.

5. Neither Buyer nor any entity with which Buyer is affiliated, nor any person acting on Buyer's behalf, has approached any other potential purchaser of the Assets to discuss the purchase price or taken any act to collude with or to dissuade any other potential purchaser from bidding on the Assets at the Auction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of June, 2011, at New York, N.Y.

_____
JAMES BAIONE

15